400 F.2d 14
 MODERN PLASTICS CORPORATION, Plaintiff-Appellee,
v.
Frank W. McCULLOCH, John H. Fanning, Howard Jenkins, Jr., Gerald A. Brown, Sam Zagoria, Individually and As Chairman and Members of and Constituting the National Labor Relations Board, and Jerome H. Brooks, Individually and As Regional Director of the Seventh Region of the National Labor Relations Board, Defendants-Appellants.
 No. 18576.
 United States Court of Appeals Sixth Circuit.
 August 29, 1968.
 
 Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., for appellants, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Clarence R. Feldman, Atty. N. L. R. B., Washington, D. C., on brief.
 Theophil C. Kammholz, Chicago, Ill., for appellee, Robert C. Claus, Tyree C. Derrick, Jr., Chicago, Ill., on brief, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Schmidt, Smith, & Howlett, Grand Rapids, Mich., of counsel.
 Before PHILLIPS, CELEBREZZE and McCREE, Circuit Judges.
 CELEBREZZE, Circuit Judge.
 
 
 1
 This is a case where the Company, Modern Plastics Corporation, seeks to short-cut the usual route for contesting National Labor Relations Board decisions because the Board allegedly acted in excess of its delegated powers. The Board, after a hearing as required by Section 9(c) of the Act, 29 U.S.C. § 159(c), directed the Regional Director to conduct a representation election among the Company's employees on or before March 7, 1968. Modern Plastics filed a complaint in the United States District Court for the Western District of Michigan asking that the election be enjoined because the Board had not, prior to its election hearing, conducted an investigation as required by Section 9(c) to determine if there was "* * * reasonable cause to believe that a question of representation affecting commerce exist[ed] * * *." 29 U.S.C. § 159(c). The District Court enjoined the Board from conducting the scheduled election and the Board has appealed. We reverse the judgment of the District Court and remand the case with directions to dismiss the complaint.
 
 
 2
 After almost twenty-four years of apparently harmonious labor relations with the Modern Plastics Employees' Committee, the labor problems of the Company began on June 16, 1964, when District 39, International Association of Machinists and Aerospace Workers, AFL-CIO (hereinafter "IAM"), filed a representation petition with the National Labor Relations Board. A hearing on the petition was set for July 15, 1964; but, after a conference with counsel for the Company, the Regional Director notified all parties of his intention to dismiss the petition because an existing contract between Modern Plastics and the Employees' Committee would act as a bar to any representation proceeding.[1] Before the petition was dismissed, however, IAM filed an unfair labor practice charge alleging that the Company dominated the Employees' Committee in violation of Section 8(a) (1) and (2) of the Act, 29 U.S.C. § 158(a) (1) and (2). Following established Board procedure, the Regional Director notified all parties that he would suspend action on the representation proceeding pending the outcome of the unfair labor practice charge.
 
 
 3
 A complaint was filed on the charge, and after the usual hearings the Board found that the Company had violated Section 8(a) (1) and (2) in its dealings with the Employees' Committee and ordered the Committee to be disestablished. On petition to review, we disagreed with the Board and set aside its order, finding that substantial evidence did not support the Board's determination that the Committee was company-dominated. Modern Plastics Corporation v. National Labor Relations Board, 379 F.2d 201 (6th Cir. 1967).
 
 
 4
 Issuance of our mandate, however, did not resolve Modern Plastics' labor difficulties. On June 13, 1967, IAM requested that its representation petition filed in 1964 be reopened;[2] and shortly after the Board closed the unfair labor practice case on September 13, 1967, the Regional Director reactivated the representation petition and scheduled a hearing for October 3, 1967. The Company then filed a motion requesting a current showing of interest, in response to which IAM submitted approximately 145 authorization cards that allegedly had been recently signed by Modern Plastics employees. But when the Company offered a list of employees against which to check the cards, the Regional Director refused the list stating that he was administratively satisfied that IAM had made a sufficient current showing of interest. Finally, on October 24, 1967, a hearing was held on the representation petition. After the usual procedures, the Board issued a Decision and Direction of Election on February 6, 1968, directing that an election be held on or before March 7, 1968.
 
 
 5
 Before the date of the election the Company sought the instant injunction alleging several grounds for relief. The District Court found all the grounds without merit except one. Relief was granted because the Board had "* * * failed to conduct the investigation required by Section 9(c) of the Labor Management Relations Act, 29 U.S.C. § 159 (c), and Sections 101.17 and 101.18 of the National Labor Relations Board's Statements of Procedure, Series 8, as amended * * *". We agree with the District Court's disposition of the other grounds for relief, but hold that the Court should have also dismissed the complaint as to the alleged failure to investigate.
 
 
 6
 Before proceeding to the merits of the case, we must dispose of the Company's contention that this appeal is moot since the date of the scheduled election passed before the notice of appeal was filed. It is clear from the District Court's order that the Board was enjoined from conducting any election among the Company's employees unless it conducted a new representation investigation. If we dismissed this case as moot and the Board attempted to set a new date for election based on the findings of its previous hearings, it would stand the risk of being held in contempt of court; or, at the least, its efforts would be frustrated by the issuance of another injunction. Under the circumstances, the question of the election remains unresolved; therefore the merits of the case are before us and must be decided. Division 1287 of Amalgamated Ass'n of Street, Electric Railway and Motor Coach Employees v. State of Missouri, 374 U.S. 74, 78, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963).
 
 
 7
 On the merits, both parties ask us to make slight variations on the established law concerning direct judicial review of Board actions. In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court held that a federal district court had subject matter jurisdiction of a suit "* * * to strike down an order of the Board * * * contrary to a specific prohibition in the Act." 358 U.S. at 188, 79 S.Ct. at 184. Modern Plastics asks us to extend "* * the painstakingly delineated procedural boundaries of Kyne * * *"[3] to include cases where the Board fails to perform a mandatory requirement of the Act. Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 997 (1963); Cf. Brotherhood of Railway and Steamship Clerks, etc. v. Association For Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). Conversely, the Board argues that the Leedom v. Kyne procedure is available only to unions since an employer can almost invariably obtain review of the Board's action by refusing to bargain with the certified representative. But see Boire v. Greyhound Corporation, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).[4] We find it unnecessary to reach either of these questions since it is clear to us that the pre-hearing investigation by the Board in this case satisfied the statutory mandate.
 
 
 8
 A merely erroneous or arbitrary exertion of authority by the Board will not ordinarily justify injunctive intervention, Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963); American Metal Products Company v. Reynolds, 332 F.2d 434 (6th Cir. 1964); Uyeda v. Brooks, 365 F.2d 326 (6th Cir. 1966); but Leedom v. Kyne indicates that the District Court at least had jurisdiction to determine if the contested Board action was plainly beyond the bounds of the Act, or clearly in defiance of it. Cf. McCulloch v. Libby-Owens-Ford Glass, Co., 403 F.2d 916 (D.C.Cir. 1968).
 
 
 9
 In this case, the Board allegedly ignored that part of Section 9(c) that provides: "Whenever a petition shall have been filed * * * the Board shall investigate such petition * * *." But the required investigation need only be sufficient to give a "* * * reasonable cause to believe that a question of representation affecting commerce exists * * *." 29 U.S.C. § 159(c). So the question immediately arises as to the limitations on the extent of the District Court's inquiry into the Board's investigation. It is doubtful that limitations on the review of a standard set so plainly within the discretion of the Board can ever be clearly delineated. Perhaps the plenary review sought here is even less appropriate since the only purpose of the investigation is to determine whether to hold a hearing where the issues of the existence of a question of representation will be further examined in an adversary type proceeding.[5] But the statute requires an investigation, and in light of the language in the analogous case of Brotherhood of Railway Clerks, etc. v. Association For Benefit of Non-Contract Employees, 380 U.S. 650, 85 S. Ct. 1192, 14 L.Ed.2d 133 (1965), we will assume without deciding, that a complete failure to investigate would invalidate the Board's direction of election and that the District Court could inquire to some limited extent into the sufficiency of the investigation.
 
 
 10
 On our first assumption, we do not read the District Court's opinion as finding that the Board conducted absolutely no investigation.[6] If such a finding was made, it would be clearly erroneous; for this is not a case where the Regional Director was totally unfamiliar with the Company or its employee setup. Modern Plastics had been involved in Board litigation for several years. The Regional Director was familiar with the Company's collective bargaining agreement situation and also knew that in May, 1967, a petition signed by 171 of the Company's employees had been filed with the Board asking for an election to select a new bargaining representative. We cannot say that with the information available to him the Regional Director could not reasonably find that a question of representation existed.
 
 
 11
 The Board is not required to go through the formality of redetermining facts already within its knowledge. The nature and quality of evidence justifying a conclusion that there is reasonable cause to believe that a question of representation exists will vary from case to case and likewise so will the nature and quality of the investigation required. In the Railway Clerks case the Supreme Court noted:
 
 
 12
 "An investigation is `essentially informal, not adversary'; it is `not required to take any particular form'. * * * These principals are particularly apt here where Congress has simply told the Board to investigate and has left to it the task of selecting the methods and procedures which it should employ in each case." 380 U.S. at 662, 85 S.Ct. at 1198.
 
 
 13
 The District Court found, however, that the Board's prehearing investigation must take the "particular form" outlined in the Board's own Statement of Procedure. Sections 101.17 and 101.18, National Labor Relations Board's Statement of Procedure, Series 8, as amended (C.F.R., Title 29, Chapter 1, Part 101). The investigation in the instant case was held insufficient to satisfy the requirements of the Act solely because the Regional Director's refusal to compare the authorization cards with the proffered employees list was contrary to the part of Section 101.18 that provides:
 
 
 14
 "* * * The evidence of representation submitted by the petitioning labor organization or by the person seeking decertification is ordinarily checked to determine the number or proportion of employees who have designated the petitioner, it being the Board's administrative experience that in the absence of special factors the conduct of the election serves no purpose under the statute unless the petitioner has been designated by at least 30 percent of the employees. * * *"
 
 
 15
 That holding of the Court was erroneous, for we have recently held that a showing of interest is not a jurisdictional prerequisite to the Board's direction of an election. National Labor Relations Board v. Louisville Chair Co., Inc., 385 F.2d 922, 926-927 (6th Cir. 1967).[7] Moreover, the statement of procedure is simply a guideline for Board personnel; it does not constitute formal rules or regulations that could appropriately serve as a standard binding the Board to a particular form of pre-hearing investigation in every case.[8]
 
 
 16
 A determination of whether there is reasonable cause to believe that a question of representation exists is essentially a factual issue.[9] Whatever might be the outer limits of the Board's discretion in making the investigation and determination of that issue, they were not reached in this case. The facts before the Regional Director at the time he ordered the October 3d hearing were not so plainly insubstantial that he could not reasonably conclude that a sufficient question of representation existed to justify further inquiry through the usual adversary hearing. Therefore, his action in setting a hearing date was not plainly beyond the bounds of the Act, nor clearly in defiance of its provisions. Hence, the District Court should have dismissed the complaint as to that issue.
 
 
 17
 We would feel remiss if we concluded this case without noting our concern at the apparent arbitrariness of the Regional Director's action. While we can appreciate the Board's desire not to be harassed by "dilatory tactics in representation proceedings"[10] and its desire to have this question of district court jurisdiction finally determined, we are constrained to note that this entire controversy and the long delay of the election could probably have been avoided if the Regional Director had taken ten minutes to check the authorization cards against the Company's employee list. More important to us, the Board would not have burdened the already over burdened docket of this Court with yet another of its many cases.
 
 
 18
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 Under Board decisions a valid collective bargaining agreement acts as a bar to a representation petition. Leonard Wholesale Meats, Inc., 136 NLRB 1000 (1962). The Board found that the direction of election in this case was not barred, however, because the decision issued after the expiration date of the contract that was in existence at the time the representation petition was filed, citing United Fruit Company, 134 NLRB 286, n. 23 (1961) as authority
 
 
 [2]
 The petition had not been acted upon because of the pending unfair labor practice proceedings
 
 
 [3]
 Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964)
 
 
 [4]
 In two other exceptional circumstances plenary district court review of Board orders has been upheld. But this is not a case where Board action has denied plaintiff a constitutional right, Fay v. Douds, 172 F.2d 720 (2d Cir. 1949); nor is it a case involving "questions particularly high in the scale of our national interest because of their international complexion * * *." McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963)
 
 
 [5]
 In this case, the Company participated in the representation hearing and objected to the Board's failure to investigate the petition only after losing that contest. The only damage that a failure to investigate could have caused the Company was the expense and inconvenience of participating in a needless hearing, but the direction of election shows that the hearing was not needless. Therefore, it might be suggested that by participating in the hearing the Company waived any defects in the Board's previous procedure that did not substantially affect any rights of the Company. But in view of the holding in Brotherhood of Railway Clerks, etc. v. Association For Benefit of Non-Contract Employees, 380 U.S. 650, 85 S. Ct. 1192, 14 L.Ed.2d 133 (1965), we will not decide whether the District Court is thus deprived of jurisdiction to determine the sufficiency of the investigation since we can decide this case on other grounds
 
 
 [6]
 The Company goes so far as to suggest that the Board had not even investigated to determine the "commerce" question or the appropriateness of the unit. It is patently unrealistic to contend that the Board would have carried on three years of unfair labor practice litigation without first determining that the Company came within the jurisdictional limitations or that the Company over that long period would have overlooked such a fundamental flaw in the Board's case. Furthermore, the Board could have hardly prosecuted the unfair labor practice charge without learning something of the Company's employee situation
 
 
 [7]
 The Board erroneously citesLouisville Chair, for the proposition that a prehearing investigation is not required. That case was clearly limited to the holding that a showing of interest is not invariably required to justify the Board's direction of an election; but even that narrow holding precludes a determination that the failure to investigate a showing of interest invalidates a direction of election.
 
 
 [8]
 The procedures involved in cases such as United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681 (1954), and Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), cannot be profitably compared with the procedure involved in this case. In those cases the procedure provided by the agency was the only method for contesting the agency action. The Supreme Court held those procedures binding in order to avoid the due process issue. We have no questions of such great moment involved in this case, nor an agency procedure or action that is subject to no other method of review
 
 
 [9]
 Plenary district court review of the method of making such determinations must be carefully scrutinized in view of Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), where the Supreme Court stated: "TheKyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board, has led it to a conclusion which does not comport with the law." 376 U.S. at 481, 84 S.Ct. at 899.
 
 
 [10]
 See statement of Senator Robert A. Taft in Leedom v. Kyne, 358 U.S. 184, 194, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (Brennan, J., dissenting)