Rafael **MONTILLA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

**No. 411, Docket 90–4058.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1990.

Decided Feb. 12, 1991.

Maria E. Liz, New York City (Liz & Botshon, New York City, of counsel), for petitioner.

Diogenes P. Kekatos, Asst. U.S. Atty., S.D. New York (Marla Alhadeff, Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty. S.D. New York, New York City, of counsel), for respondent.

Before CARDAMONE and MINER, Circuit Judges, and POLLACK, District Judge *.

CARDAMONE, Circuit Judge:

This appeal presents one central issue for review: to what degree must an immi-

---

* Honorable Milton Pollack, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

gration judge comply with INS regulations designed to safeguard an alien's right to counsel, even when those regulations may be more stringent than required by the due process clause of the Fifth Amendment. The constitution guarantees only those "minimal historic safeguards" which persons are entitled to receive, summarized under the Fifth Amendment as due process of law. *See McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 612, 87 L.Ed. 819 (1943) (Frankfurter, J.).

■ The notion of fair play animating that amendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rulemaker may then with impunity ignore or disregard as it sees fit. The INS may not fairly administer the immigration laws on the notion that on some occasions its rules are made to be broken. Because in our view the immigration judge did not adhere strictly to the INS regulations in this case, we grant the petition for review and remand the matter to the INS for a new hearing.

## FACTS

Rafael Montilla petitions for review of a final order of deportation of the United States Immigration and Naturalization Service's (INS) Board of Immigration Appeals (Board or Board of Appeals) dated March 22, 1990. Petitioner, a 44–year–old citizen of the Dominican Republic, entered the United States as a lawful permanent resident on March 17, 1973, and has resided here continuously—except for a brief visit home in 1979—for the past 17 years. On November 4, 1986 Montilla was convicted after a jury trial in the Southern District of New York (Broderick, J.) of conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B), and sentenced to a six-year term of imprisonment. We affirmed the conviction in an unpublished opinion dated October 2, 1987. Six months later, on May 4, 1987, while petitioner was in prison, the INS served upon him an order to show cause and notice of hearing, alleging that his cocaine conviction rendered

him deportable under § 241(a)(11) of the Act. 8 U.S.C. § 1251(a)(11) (1988).

A deportation hearing was held on January 25, 1989 before an immigration judge at the Oakdale Detention Facility in Oakdale, Louisiana. The judge, noting that petitioner was present at the hearing without counsel, informed him of the nature of the proceedings and of certain rights he had throughout the deportation process, including the right to have an attorney represent him in the proceedings at no expense to the government. The judge gave petitioner a list of attorneys who might be able to represent him at little or no fee. When Montilla was then asked if he wished to have an attorney or to proceed without one, he responded

> In reality I really don't know what to do. I am unfamiliar with the laws of Immigration. This is the first time that I find myself in this type of situation. As I indicated I am not really sure what to do. I would consider that you are an honorable person and Honorable Judge and I really don't know what I should do.

The judge thereupon adjourned the hearing to allow petitioner more time to consider what he wanted to do.

■ The judge opened the resumed hearing on February 10, 1989 stating

> Mr. Montilla, we met on the 25th day of January, 1989, and I read all your rights to you at that time. At that time sir, you asked for more time to determine what you wanted to do. Now I note that you have been a resident since 1973?

With that opening, the hearing began in earnest, and no further mention or inquiry was made regarding petitioner's wishes with respect to his right to counsel. Although Montilla had twice moved unsuccessfully to vacate his conviction, pursuant to 28 U.S.C. § 2255, the drug conviction is considered final and a basis for deportation when appellate review of the judgment—not including collateral attacks—has become final. *See Marino v. INS,* 537 F.2d 686, 691–92 (2d Cir.1976). Upon petitioner's conceding that he had been convicted of a narcotics violation, the immigration

judge properly found deportability established.

■ At the same hearing, petitioner submitted an application for a waiver of inadmissibility pursuant to § 212(c) of the Act, which provides, in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30) and (31) of subsection (a) of this section.

8 U.S.C. § 1182(c) (1988). Paragraphs 1–25, 30 and 31 of § 1182(a), list grounds of exclusion from the United States—including paragraph (9) convictions for narcotics offenses. Although facially limited to exclusion proceedings, the waiver provision has been applied in deportation proceedings to lawful permanent residents who meet the seven-year eligibility requirements, but who have not departed from the United States. *See Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976); *Matter of Silva*, 16 I & N Dec. 26, 30 (BIA 1976). Thus, the waiver provision is applicable to Montilla. The immigration judge adjourned the hearing until March 6, 1989, intending to take up petitioner's § 212(c) waiver application at that time.

When the hearing resumed on March 6, the judge again noted petitioner was present without counsel. Montilla's application for § 212(c) relief was admitted into evidence. Included with it were supporting documentary proof, including letters from previous employers indicating he held both a day and a night job prior to his arrest in 1986, a certificate indicating he had participated in the prison's chapel worship program, and a memorandum from the Head Chaplain at the prison stating his belief that Montilla was a "hard worker," "a most active participant in our chapel worship programs," and a man "determined to improve his position in society." Petitioner testified to his family relationships and to the presence of several relatives in the

U.S., including a wife and several children. During subsequent questioning, petitioner denied any involvement in narcotics trafficking, despite his previous concession regarding his outstanding conviction.

The immigration judge ruled from the bench that petitioner's deportability was established by evidence that was "clear, convincing, and unequivocal." After balancing the factors in Montilla's favor—long-term residence in the United States, majority of family in the country including immediate family, stable employment history, and active church membership—against the single factor against him—conviction for a narcotics offense, described as an "extremely serious act"—the court found that the negative factors outweighed the positive ones and denied relief under § 212(c) of the Act.

Montilla appealed the immigration judge's decision to the Board of Appeals contending that he had been denied due process because he did not knowingly waive his right to counsel. On March 22, 1990 the Board dismissed the appeal, with one member dissenting. It observed that Montilla had been provided with a list of immigration lawyers practicing in the area where the hearing took place, had been afforded a two-week continuance in order to obtain an attorney, and did not request an opportunity to secure counsel when the hearing reconvened. The Board held petitioner had effectively waived his right to counsel.

It further noted that were it improper to proceed without further inquiry by the judge regarding the waiver of counsel, "respondent would be required to demonstrate prejudice before we would grant a new hearing, and he has not done so." After an analysis of the factors set forth in *Matter of Marin*, 16 I & N Dec. 581 (BIA 1978), and the evidence presented at the deportation hearing, the Board concluded that even if an "attorney could have assisted the petitioner in demonstrating additional factors" militating in favor of relief under § 212(c) of the Act, a heightened demonstration of unusual equities had to be made in a case such as petitioner's, where an

alien has been convicted of a serious drug trafficking offense. The Board also stated that Montilla had not demonstrated rehabilitation or contrition since he had continued to deny any involvement in narcotics trafficking. The dissenting Board member would have remanded for a new hearing based on the immigration judge's failure to make sufficient inquiry regarding petitioner's right to counsel.

On appeal, petitioner's sole contention is that the immigration judge did not follow the applicable regulation protecting an alien's right to counsel, 8 C.F.R. § 242.16(a) (1990), and that this error constituted a denial of due process. The INS asserts that petitioner waived his right to counsel or, in the alternative, that in any event he suffered no prejudice from lack of counsel.

## DISCUSSION

### I INS Regulations

■ We turn first to the regulations at issue in this case. Because a deportation proceeding is civil, not criminal, in nature, various constitutional protections are not required. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984); *Michelson v. INS*, 897 F.2d 465, 467 (10th Cir.1990) (No Sixth Amendment right to government-provided counsel in a deportation proceeding). Nonetheless, the Due Process clause and the Immigration and Nationality Act affords an alien the right to counsel of his own choice at his own expense. *Rios–Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985); *see* 8 U.S.C. § 1362 (1988). Section 242(b) of the Act directs the Attorney General to adopt regulations to assure the integrity of the deportation process, including regulations to assure that "the alien shall have the privilege of being represented (at no expense to the Government) by such counsel ... as he shall choose." 8 U.S.C. § 1252(b)(2) (1988).

Regulations in effect at the time of petitioner's deportation hearing (references are to those regulations revised as of January 1, 1990) state this right to counsel, 8 C.F.R. § 242.10, of his own choice and at no expense to the government, 8 C.F.R. § 242.16(a), and provide that the alien be notified of his right to such counsel and be given a list of available free legal services at the deportation hearing. *Id.* As a procedural safeguard of the alien's right to counsel, the regulations further require at the commencement of the hearing:

> (a) *Opening.* The Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings *and require him to state then and there whether he desires representation....*

*Id.* (emphasis supplied).

The plain language of the regulation states that the hearing officer, after informing an alien of his right to counsel at no expense to the government, *must* require the alien to state on the record—affirmatively or negatively—whether or not he desires representation. By forcing the alien to state his preference on the record, the regulation is clearly designed to force that person to confront this choice. In that way compliance with the regulation assures that the decision to forego the right to counsel was voluntarily and knowingly made.

### II What Test to Apply?

#### A. *The* Accardi *Doctrine*

We have two options in applying these regulations in a case where there was a failure to fully comply with them: one is to insist that they be scrupulously adhered to; the other is to search the record to see if petitioner was prejudiced by the failure. We consider the first option. The seeds of the *Accardi* doctrine are found in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency. *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422, 62 S.Ct. 1194, 1202, 86 L.Ed. 1563 (1942) (agency regulations on which individuals are entitled to rely bind agency). The doctrine was first announced in an immigration case in *United States ex*

*rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), where the Court vacated a deportation order of the Board of Immigration Appeals because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held to be reversible error.

The doctrine has been applied in other contexts, for example, in *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) and *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), to vacate the discharges of government employees, and in *Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963), to overturn a criminal contempt conviction. This Circuit and other circuits have also used it. *See, e.g., Smith v. Resor,* 406 F.2d 141, 145 (2d Cir.1969); *United States v. Leahey,* 434 F.2d 7, 9–11 (1st Cir.1970); *United States v. Heffner,* 420 F.2d 809, 812 (4th Cir.1969); *Geiger v. Brown,* 419 F.2d 714, 718 (D.C.Cir.1969); *Pacific Molasses Co. v. FTC,* 356 F.2d 386, 389–90 (5th Cir.1966).

 The *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process. *See International House v. NLRB,* 676 F.2d 906, 912 (2d Cir.1982); *Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 758 F.2d 708, 711 (D.C.Cir. 1985); K. Llewellyn, *The Bramble Bush* 43 (1951); Note, *Violations by Agencies of Their Own Regulations,* 87 Harv.L.Rev. 629, 630 (1974). Its ambit is not limited to rules attaining the status of formal regulations. As the Supreme Court noted "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required," and even though the procedural requirement has not yet been published in the federal register. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) (declining to address constitutional issues raised by ag-

grieved Indians because case disposed of on this statutory ground).

To be sure, the cases are not uniform in requiring that every time an agency ignores its own regulation its acts must subsequently be set aside. Nonetheless, decisions contrary to the views expressed in *Accardi* may generally be distinguished from the instant case because in most of those cases the agency regulation that was departed from governed internal agency procedures rather than, as here, the rights or interests of the objecting party; *see, e.g., United States v. Caceres,* 440 U.S. 741, 752–55, 99 S.Ct. 1465, 1471–73, 59 L.Ed.2d 733 (1979); *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 538–39, 90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547 (1970); *United States v. Lockyer,* 448 F.2d 417, 420–21 (10th Cir.1971); *Modern Plastics Corp. v. McCulloch,* 400 F.2d 14, 19 (6th Cir.1968); *NLRB v. Monsanto Chem. Co.,* 205 F.2d 763, 764–65 (8th Cir.1953). Other cases may be distinguished because a court was unwilling to craft a remedy for administrative non-compliance with its own rules. *See, e.g., United States v. Leonard,* 524 F.2d 1076, 1089 (2d Cir.1975) (refusing to invoke the exclusionary rule as remedy to agency non-compliance with its internal procedure), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976). The doctrine has continued vitality, particularly where a petitioner's rights are "affected." *See Morton,* 415 U.S. at 235, 94 S.Ct. at 1074.

## B. *The "Prejudice" Test*

Despite the existence of the long-settled *Accardi* rule, the government invites us to subject the instant petition to harmless error analysis, as the Ninth Circuit did in *United States v. Calderon–Medina,* 591 F.2d 529 (9th Cir.1979). In that case, as in this, an alien challenged the validity of a deportation order claiming that the agency failed to adhere to its own regulations in reaching its decision. The court modified the *Accardi* analysis, ruling that an agency's violation of its own regulation does not invalidate a deportation proceeding unless (a) "the regulation serves a purpose of benefit to the alien," and (b) "the violation

prejudiced interests of the alien which were protected by the regulation." *Id.* at 531.

This holding followed the Supreme Court's decision in *Morton* where the Court said that before an individual may claim reversible error from an agency's failure to comply with its own procedures, he must show that the procedures "affect" his rights. *See* 415 U.S. at 235, 94 S.Ct. at 1074. The Ninth Circuit's gloss on *Morton*—and the other Supreme Court cases following *Accardi*—requires an alien to show "prejudice" to his interests before relief may be granted.

The *Calderon–Medina* prejudice test was specifically adopted by the INS in *In re Garcia–Flores*, 17 I & N Dec. 325 (BIA 1980). In adopting this formulation, the INS stated that in those cases where agency action has been overturned by the Supreme Court, prejudice to the individual has been apparent as a result of the violation of a regulation intended to confer a benefit. The INS concluded

> Where compliance with the regulation is mandated by the Constitution, prejudice may be presumed. Similarly, where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency, it can be deemed prejudicial. [citations omitted] As a general rule, however, prejudice will have to be specifically demonstrated.

*Id.* at 329.

The government cites other cases similarly holding that an alien must show prejudice before a violation of his right to counsel in a deportation hearing will require reversal. *See, e.g., Farrokhi v. INS*, 900 F.2d 697, 702 (4th Cir.1990); *Trench v. INS*, 783 F.2d 181, 183 (10th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *Aguilera–Enriquez v. INS*, 516 F.2d 565, 569 (6th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Villanueva–Jurado v. INS*, 482 F.2d 886, 888 (5th Cir.1973). Nonetheless, unlike *Calderon–Medina*, none of these cases adopting the prejudice test involve challenges to an agency's alleged non-compliance with its own *regula-tions*—which is the crux of the *Accardi* line of cases—so they provide no direct support for the government's position.

By contrast, two other decisions have declined to apply a prejudice test to such claims, though concededly neither of them involved agency non-compliance with its own regulations, *see Castaneda–Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir.1975) (right too fundamental to be circumscribed by prejudice test—no alleged non-compliance with regulation); *Yiu Fong Cheung v. INS*, 418 F.2d 460, 464 (D.C.Cir.1969) (same). One court has indicated it would not apply a prejudice test were it confronted with the issue. *See Chlomos v. INS*, 516 F.2d 310, 314 (3d Cir.1975) (right not subject to prejudice test).

III Rejection of the Prejudice Test

We have never had occasion to address whether a challenge to an INS determination based on the agency's non-compliance with its own regulations should be governed by the prejudice standard. *See Henriques v. INS*, 465 F.2d 119, 120–21 (2d Cir.1972) (per curiam) (declining to reach question whether potential deportees have a constitutional right to counsel at government expense absent a showing of prejudice), *cert. denied*, 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *Ballenilla–Gonzalez v. INS*, 546 F.2d 515, 520 n. 10 (2d Cir.1976) (declining to decide whether denial of potential deportee's statutory right to retained counsel is governed by the *Henriques* prejudice standard), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977). Having decided to address that issue in this case, we are unpersuaded for several reasons to adopt the prejudice standard.

The *Accardi* doctrine is still alive and well, and by applying this judicially-evolved rule ensuring fairness in administrative proceedings, we may avoid deciding the case on constitutional grounds, as urged by the parties. Such approach carefully adheres to a fundamental rule of judicial restraint, namely, if a case can be decided on nonconstitutional grounds, it should be. *See Jean v. Nelson*, 472 U.S. 846, 854, 105

S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985); *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

As a practical matter, to remand for agency compliance with its own rules would actively encourage such compliance. Careless observance by an agency of its own administrative processes weakens its effectiveness in the eyes of the public because it exposes the possibility of favoritism and of inconsistent application of the law. *See McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).

Further, the efficient use of scarce judicial resources is promoted by remand. Adopting the prejudice test requires judicial exploration of petitioners' arguments, and burdens a court with carefully balancing the positives and negatives reflected in petitioner's circumstances to decide whether in hindsight the positives might so outweigh the negatives as to succeed in altering the result reached by the INS. In contrast, upon concluding that the INS failed to follow its own regulations, if the matter is returned to the INS with instructions to comply with those regulations, then the determination whether a petitioner merits § 212(c) relief is properly left to the wisdom and expertise of the INS in the first instance. Review, if later required, would then be under the deferential abuse of discretion standard. *See Blackwood v. INS*, 803 F.2d 1165, 1168 (11th Cir.1986); *De Los Santos v. INS*, 690 F.2d 56, 60 (2d Cir.1982); *Bertrand v. Sava*, 684 F.2d 204, 211–17 (2d Cir.1982).

For these reasons, we hold that an alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief. All that need be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them.

#### IV Application of *Accardi*

■ We turn now to application of the *Accardi* doctrine and the INS regulations to the facts in the instant case. Here the record indicates Montilla was advised of his right to counsel by the immigration judge at the January 25, 1989 hearing, but was never required to state on the record whether or not he desired such representation. Petitioner's reply to the judge's question was unresponsive. This was the sole inquiry the judge made regarding whether defendant wanted to have counsel present to represent him at the hearing. We believe petitioner's response—one that demonstrated complete ignorance on this subject—tellingly reveals his unawareness of the nature of the privilege available to him. The record shows Montilla never faced and decided this question which the regulation required the immigration judge to elicit from him. Hence, the judge failed to comply with 8 C.F.R. § 242.16(a).

■ Nor do we agree with the INS' conclusion that Montilla waived his right to counsel. It is true that an alien may waive that right in deportation proceedings, and such a waiver will be upheld if voluntarily made. *See, e.g., Farrokhi*, 900 F.2d at 701–02; *Reyes–Palacios v. INS*, 836 F.2d 1154, 1155 (9th Cir.1988); *Cobourne v. INS*, 779 F.2d 1564, 1566 (11th Cir.1986); *Matter of Gutierez*, 16 I & N Dec. 226, 228 (BIA 1977) ("[M]eticulous care must be exercised to insure that a waiver of this right is competently and understandingly made."). A waiver of the right to counsel has been found, however, only where it was possible to make a specific finding that the alien indicated—through what he said to the immigration judge—that he wanted to proceed without counsel. *See Farrokhi*, 900 F.2d at 701–02 (waiver found where alien stated: "At this point, I would like to speak for me[,] for myself."); *Cobourne*, 779 F.2d at 1565–66 (waiver where court found "Cobourne elected to proceed with the hearing unrepresented"); *Barthold*, 517 F.2d at 691 (waiver where alien stated he would proceed without lawyer); *Burquez*, 513 F.2d at 755 (waiver where alien told judge he could "speak for myself"). Montilla never stated or otherwise indicated he wished to proceed without counsel.

The government asks us to infer a waiver of Montilla's right to counsel either because (1) after being informed of his right at the first hearing, he arrived at the second hearing without counsel, or (2) because he stood mute at the second hearing when the judge noted for the record that he was present without counsel. Waiver of the right to counsel may not be inferred in such circumstances from silence. *See Rios–Berrios*, 776 F.2d at 863 (no waiver where alien who indicated at earlier hearing desire for counsel present did not repeat request at later hearing, and record demonstrated "that the immigration judge proceeded instantly to take evidence, an action that would intimidate an alien appearing before him"). There are simply too many possible interpretations for Montilla's silence. For instance, he may well have believed that he was not allowed to speak unless first spoken to by the judge. In this regard, the record is unclear and ambiguous, which is precisely what the applicable regulation was designed to avoid. Consequently, petitioner did not knowingly and voluntarily waive his right to counsel.

We recognize that petitioner's chances on remand may be slim because of the high standard he must meet as a narcotics offender to be entitled to a waiver of deportation under § 212(c) of the Act. *See Matter of Marin*, 16 I & N Dec. 581, 586 n. 4 (BIA 1978) ("we require a showing of unusual or outstanding countervailing equities by applicants for discretionary relief who have been convicted of serious drug offenses, particularly those involving the trafficking or sale of drugs"). Yet, where the violated agency regulation governs individual interests, the *Accardi* doctrine requires reversal irrespective of whether a new hearing would produce the same result. *See Yellin*, 374 U.S. at 121, 83 S.Ct. at 1835; *Accardi*, 347 U.S. at 268, 74 S.Ct. at 504. Plainly, the objecting party should have the benefits accorded him under the regulations.

Petitioner's long residence in this country, strong family and religious ties, and history of steady employment make his case for § 212(c) relief at least arguably meritorious in spite of the obvious hurdle posed by his narcotics conviction. Despite the unlikelihood of success, we must remand because Montilla's right to counsel was obviously affected by the failure of the immigration agency to comply with its own regulation. A lawyer might well have made a difference in the earlier proceeding—they usually do. *See* Gordon, *Right to Counsel in Immigration Proceedings*, 45 Minn.L.Rev. 875, 877 (1961).

## CONCLUSION

The petition for review is granted. The decision of the Board of Appeals is reversed and the case is remanded to the Board for further proceedings consistent with this opinion.

MINER, Circuit Judge, dissenting:

Because I am convinced that the Immigration Judge fully complied with the INS regulation regarding the right to counsel, I respectfully dissent.

Deportation proceedings before an Immigration Judge must be conducted "in accordance with such regulations ... as the Attorney General shall prescribe[ ]," and the regulations must include a requirement that

> the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

8 U.S.C. § 1252(b)(2) (1988).

The INS regulation in question goes beyond the statutory requirement. It directs the Immigration Judge to

> advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice ... in the proceedings and require him to state then and there whether he desires representation; advise the respondent of the availability of free legal services programs....

8 C.F.R. § 242.16 (1990).

It seems to me that the Immigration Judge scrupulously complied with the regulation in this case. At their first meeting,

he advised Montilla of his right to an attorney, provided him with a list of Legal Aid lawyers, advised him of his right to present evidence in the form of witnesses, and discussed the hearing procedure, the object of the hearing and the right to appeal. The Judge specifically asked Montilla whether he wanted time to prepare or to find an attorney. When Montilla replied that he "really [didn't] know what to do," the Judge told him he could not advise him and then adjourned the matter for two weeks so that Montilla could "talk about this with an attorney."

The Judge performed the duty imposed upon him by the INS regulation—he required Montilla to state whether representation was desired after fully advising him of his right to be represented. The regulation does not command that the answer to the inquiry be responsive. According to my brethren, the Immigration Judge failed to comply with the regulation because "Montilla never faced and decided [the] question." At p. 169. I disagree with that statement in two respects. First, I think that Montilla "faced" the question because he apparently understood that he had the right to an attorney at his own expense; I think that he "decided" the question because he appeared on the adjourned date without counsel, prepared to proceed. Second, the regulation does not mandate a particular form of response or any response at all, so it cannot be said that the *Judge* failed to comply with the regulation because the answer to his question was not responsive. Montilla was entitled to stand mute if he wished to do so. The regulation focuses on the Immigration Judge, not on the respondent, at the hearing. That Montilla indicated an uncertainty about how he desired to proceed does not gainsay the fact that the Judge fully complied with the regulation by advising Montilla of the right to counsel and asking whether he wanted one.

*Rios–Berrios v. INS,* 776 F.2d 859 (9th Cir.1985), said by Montilla to "bear a striking resemblance to this case," is not to the contrary. The record in that case did not disclose that petitioner was advised at the first deportation hearing "of his right to counsel of his own choice or of the availability of free legal counsel." *Id.* at 860–61. The record merely contained a statement of the Immigration Judge adjourning the hearing for one working day "in light of petitioner's statement that he needed time to find a lawyer." *Id.* at 861. Petitioner appeared without counsel on the adjourned date and stated that he had called a friend who was in contact with a lawyer. The Judge gave petitioner another 24–hour adjournment and admonished him that the hearing would proceed even if no counsel were present. The hearing did in fact go forward without any further reference to counsel. The Ninth Circuit, finding that the Immigration Judge failed to comply with the regulation and the statute, predicated its decision on a totality of circumstances analysis:

> We merely say that his transfer [to Florida], combined with the unexplained haste in beginning deportation proceedings, combined with the fact of petitioner's incarceration, his inability to speak English, and his lack of friends in this country, demanded more than lip service to the right of counsel declared in statute and agency regulations, a right obviously intended for the benefit of aliens in petitioner's position.

*Id.* at 863.

The main difference between the case at bar and *Rios–Berrios* lies in the failure of the Immigration Judge in the latter case to comply with the regulation in the first instance by furnishing the specific advice and making the specific inquiry required. The advice was furnished and the inquiry was made in the case at bar. Montilla has resided in the United States for 17 years, has family and friends in this country, and is familiar with the English language. Moreover, he was afforded a two week adjournment to secure counsel, but the alien in *Rios–Berrios* was afforded only two 1–day adjournments for that purpose. Having been convicted of conspiracy to possess cocaine with intent to distribute it after a jury trial, it would seem that Montilla was well aware of the benefits of

counsel and chose not to have one in the deportation hearing.

In view of the foregoing, I see no need to revisit the *Accardi* doctrine, to adopt or reject a "prejudice test" or to decide this case on constitutional grounds.