**UNITED STATES of America**

v.

**Juan JIMENEZ, a/k/a "Franklin Gomez" a/k/a "Franklin Carela", Defendants.**

**No. 94 Cr. 1008 (SS).**

United States District Court, S.D. New York.

Nov. 13, 1995.

Geoffrey Stewart, New York City, for Defendant.

Mary Jo White, United States Attorney for the Southern District of New York by Lynn A. Neils, Assistant United States Attorney, New York City, for U.S.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Juan Jimenez moves to preclude the Government from use of a 1994 deportation order in the Government's current prosecution of the defendant for illegal reentry after having been deported, a violation of 8 U.S.C. § 1326. For the reasons discussed below, the defendant's motion is denied.[1]

### BACKGROUND

The defendant is a citizen of the Dominican Republic, who by his own admission entered the United States illegally in October, 1991. Ex. I to Aff. of Assistant U.S. Attorney Lynn A. Neils (hereinafter, "Neils Aff."); Ex. Q to Neils Aff., Transcript of Deportation Hearing at 11 (hereinafter, "Tr."). In 1992, defendant was twice arrested in New York City, under the name Juan Jimenez, for selling cocaine. On September 15, 1993, defendant pled guilty to two counts of attempted criminal sale of cocaine in the third degree. He received concurrent sentences of six months imprisonment to be followed by four-and-one-half years of probation. While incarcerated, defendant was interviewed by the Immigration and Naturalization Service ("INS"), and stated that his name was Juan Jimenez and that he had entered the U.S. illegally. He was thereafter notified that he was subject to deportation pursuant to the Immigration and Naturalization Act ("INA"), for violation of 8 U.S.C. §§ 1251(a)(1)(B) (illegal entry), 1251(a)(2)(A)(iii) (conviction of an aggravated felony), and 1251(a)(2)(B)(i) (conviction of a drug offense other than personal use possession). After he completed the incarceration portion of his sentence (two months having been credited for good behavior), the INS took defendant into custody on the three described charges and informed him that he was eligible to be released on a $15,000 bond while awaiting the deportation decision. Defendant was unable to post the bond.

On January 4, 1994, defendant appeared before Immigration Law Judge Alan L. Page to answer the INA charges. Judge Page ruled against the defendant and ordered him deported. The defendant was deported on January 24, 1994. The defendant was arrested on the instant charge, illegal reentry after having been deported, on February 22, 1995.

### DISCUSSION

This motion challenges the adequacy of the defendant's waiver of his right to counsel and to appeal at the deportation hearing. For the reasons set forth below, I find that the waivers were tainted by a coercive chill emanating from Judge Page's actions, but I find his errors did not prejudice the defendant.

■ The Supreme Court has established the right of an alien to challenge collaterally his indictment for illegal reentry by attack upon the underlying deportation order. *U.S. v. Mendoza–Lopez,* 481 U.S. 828, 838, 107

---

1. Defendant also moved for a bill of particulars, discovery and inspection, and disclosure of *Brady, Giglio* and impeachment materials. Defendant has not objected to the government's response to these requests and I, absent advice by the defendant to the contrary, grant this aspect of defendant's motion to the extent of the government response.

S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) ("*Mendoza–Lopez*") ("where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available"); *see also U.S. v. Fares,* 978 F.2d 52, 56 (2d Cir.1992) (same) ("*Fares*"). The Supreme Court has declined to enumerate each of the procedural defects that would per se be so corrosive of an alien's rights as to render the fact of deportation inadmissible in a later trial for illegal reentry. *U.S. v. Mendoza–Lopez,* 481 U.S. at 839 n. 17, 107 S.Ct. at 2155–56 n. 17. But it clearly did decide that a waiver of the right to appeal must be "considered" and "intelligent" in order for the hearing to pass muster. *Id.* at 840, 107 S.Ct. at 2156. The right to counsel was also implicated in *Mendoza–Lopez* as it was among the procedural defects the petitioner cited. *Id.* at 831, 107 S.Ct. at 2151.

*Mendoza–Lopez* also contemplated an additional enquiry into whether the denial of the fundamental right resulted in prejudice to the defendant.

> Because respondents were deprived of their rights to appeal, *and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them,* the deportation proceeding in which these events occurred may not be used to support a criminal conviction....

*Id.* at 842, 107 S.Ct. at 2157 (emphasis added).

■ Our circuit has explicitly required that prejudice must be addressed when a district court reviews, on a collateral challenge, the propriety of a deportation hearing.

The discussion in *Mendoza–Lopez,* however, suggests that for a collateral challenge to a deportation order to be successful, the alien must not only show that he was effectively deprived of his right of direct appeal, but also that the administrative proceedings were fundamentally un-

fair in some respect that would have entitled him to relief on direct appeal.... We are persuaded that if an alien has been effectively denied his right of direct appeal from the deportation order, we should examine the underlying proceedings to determine whether or not he was unfairly prejudiced by those proceedings. If we find no fundamental unfairness, and we therefore conclude that a fully informed exercise of the right of direct appeal would have yielded the alien no relief from deportation, the deportation order may be used to establish conclusively an element of a criminal offense.

*Fares,* 978 F.2d at 57 (citations omitted).[2]

■ I now analyze the motion before me in light of this two-step procedure.

The facts of defendant's hearing are troubling. The defendant was not represented by counsel. Because he speaks little English, a Spanish language interpreter was provided. The exercise of defendant's right of representation and appeal were, from the outset, counterpoised against the defendant's freedom. After being apprised of his right to counsel, defendant stated: "I have no money to pay for the bond." The transcript then reads as follows:

> JUDGE: Sir, forget about the bond right now. So you ... the government claims that you're paroled for deportation only. Is that true?
>
> DEFENDANT: Yes.
>
> JUDGE: Do you understand what that means, sir?
>
> [SILENCE]
>
> JUDGE: What it means is the only reason that the State of New York paroled you into INS custody was so that you could be deported.
>
> JUDGE: Do you understand that?
>
> DEFENDANT: Yes.
>
> JUDGE: You have every right to fight your immigration case. However, if you

---

2. In assessing the validity collateral attacks on prior convictions when used as elements of subsequent indictments, the Supreme Court has enunciated the doctrine of the " 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992), *reh'g denied,* 506 U.S. 1087, 113 S.Ct. 1068, 122 L.Ed.2d 372 (1993) (citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

do that, if you exercise that right, then the Immigration Service will make arrangements to have New York State parole pick you up, and they will take you back into custody because the only reason they paroled you was to be deported. *And if your going to fight the deportation, then they're gonna lock you up again and it will be up to them how much time you'll have to spend.*

Tr. at 2–3 (Spanish interpretation omitted) (emphasis added).

The defendant thereafter replied affirmatively to Judge Page's request for a waiver of counsel. At the end of the hearing, the judge stated:

JUDGE: Knowing all those factors, sir, do you wish to accept my decision as a final decision, or do you wish to appeal my decision to a higher court?

DEFENDANT: I just want to leave.

■ No waiver of any right is valid if extracted upon an official threat of imprisonment. Courts have long held that judges should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (citations and internal quotation marks omitted). Judge Page's statement that "if your going to fight the deportation, then they're gonna lock you up again and it will be up to them how much time you'll have to spend" contravenes any reasonable notion of due process. Any reasonable person in the defendant's position at the outset of the hearing would have been placed *in terrorem* by the threat that any exercise of his rights, indeed any contestation of the deportation, would result in imprisonment for an indefinite term. The defendant's response to Judge Page's question regarding appeal, *i.e.* "I just want to leave," shows the residual effects of the initial colloquy that left open the prospect of indefinite incarceration. Even if the defendant had been subject to revocation of his parole and reimprisonment, the linking by a judge of indefinite imprisonment to failure to waive a fundamental right infects the entire proceeding with a coercive

stench. The Government's recital of various documents furnished to the defendant prior to the hearing apprising him of his rights to counsel and appeal, and the oral notice given by Judge Page at the hearing, are insufficient to vitiate the powerful impact that the threat of continued imprisonment, for an unspecified duration, must have had on the defendant. Any waiver extracted thereafter can only be considered void. On this record then, clearly the Immigration Law Judge was in error and I find that the defendant did not voluntarily waive his right to counsel or to appeal.

■ I now turn to the issue of prejudice. Defendant argues that the right to counsel is a fundamental right in which prejudice should be presumed. As discussed above, however, the Second Circuit in *Fares* has made it clear that collateral attacks on deportation orders require positive proof of a fundamental unfairness which deprives an alien of possible relief from a deportation order. *Fares,* 978 F.2d at 57. In the instant case, defendant has failed to show that either the assistance of counsel or an appeal could have yielded him any possible relief from deportation.

Only two forms of relief from deportation were generally available: suspension of deportation pursuant to 8 U.S.C. § 1254(a)(2), and voluntary departure pursuant to 8 U.S.C. § 1254(e). The defendant, because of his narcotics convictions, was statutorily ineligible for either, however. Under both provisions, the applicant must demonstrate "good moral character." Pursuant to 8 U.S.C. 1101(f)(3), persons described in 8 U.S.C. 1182(a)(2)(A)(i)(II) ("any alien convicted of . . . . a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . .") cannot be considered to be of "good moral character." Additionally, no one convicted of an "aggravated felony" is eligible for voluntary departure. 8 U.S.C. § 1254(e)(2). The INA defines "aggravated felony" as, inter alia, "illicit trafficking in a controlled substance . . . ." 8 U.S.C. 1101(a)(43).[3] Thus, defendant has failed to

---

**3.** Defendant relies on two opinions, *Montilla v. INS,* 926 F.2d 162 (2d Cir.1991) ("*Montilla*") and *Waldron v. INS,* 994 F.2d 71 (2d Cir.1993) ("*Waldron I* "), for the proposition that there is

demonstrate prejudice in that neither counsel nor an appeal would have resulted in relief from deportation.

Recognizing his infirmity on the prejudice standard, defendant nevertheless argues that counsel might have successfully launched a habeas corpus attack on his narcotics convictions, thereby invalidating the basis for deportation.[4] But defendant has offered no competent evidence or basis[5] upon which such an attack could have been made and I therefore do not consider this mere allegation of a possible habeas attack as sufficient to demonstrate prejudice.

### CONCLUSION

For the reasons discussed above, I find that although the challenged deportation hearing was procedurally infirm, the errors did not prejudice the defendant and thus the deportation order may be presented to the jury as proof of an element of the crime charged. The motion to preclude use of the 1994 deportation order at trial is therefore **DENIED**.

**SO ORDERED.**

no requirement that a fundamental error be prejudicial in order for a motion to suppress such as this one to succeed. Defendant misapprehends the law in this area. *Montilla* is inapposite because it applies only in the context of a direct appeal from a deportation order. *Fares*, decided after *Montilla*, clearly established the law in this circuit with regard to collateral attacks such as this one and *Fares* requires a finding of prejudice.

*Waldron I* is cited by defendant to bolster his claim that *Montilla* should be extended beyond the fundamental right to appeal, and should include any circumstance in which a hearing officer contravenes INS written regulations. The *Waldron I* opinion, however, has been withdrawn and superseded by the opinion reported at *Waldron v. INS*, 17 F.3d 511 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994) (*"Waldron II"*). Not incidentally, *Waldron II* changes the holding of *Waldron I* on precisely the issue for which defendant's attorney has cited it. *Waldron II* states:

*Montilla's* holding is limited to its express terms and it may not be interpreted as suggesting an absolute no prejudice standard whenever a challenged regulation is for the benefit of an alien. Any such interpretation is unwarranted given the limited holding in *Montilla*. *Waldron*, 17 F.3d at 518 (internal quotation marks omitted). *See also, Douglas v. INS*, 28 F.3d 241, 246 (2d Cir.1994).

4. No appeal was available as the period in which to file an appeal had run by the time the hearing took place. In New York, defendants have 30 days in which to file an appeal. N.Y.Crim.Pro. Law § 460.10(1)(a).

5. Defendant points to a portion of the transcript before Judge Page in which he admits his state court convictions but denies having committed the crimes. Tr. at 11–12. This colloquy does not establish that defendant was not advised of his rights at his plea allocutions or that his waiver of rights was unknowing. It merely provided an excuse for his decision to plea guilty.