UNITED STATES of America, Plaintiff,

v.

Jorge BAEZ–ORTEGA, Defendant.

Crim. No. 95–305.

United States District Court,
D. Puerto Rico.

Dec. 13, 1995.

Benicio Sanchez–Rivera, Federal Public Defender, Gustavo A. Gelpi, Jr., Asst. Public Defender, Old San Juan, PR, for defendant.

Maria Pabón, Asst. U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for plaintiff.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion to dismiss the one count charge against Defendant, Jorge Baez Ortega ("Baez"), for unlawful reentry into the United States after deportation in violation of 8 U.S.C. § 1326(a) & (b)(2) (1995). For the reasons explained below, the Court **denies** the motion.

## FACTS

The facts in this case are undisputed. Baez, a native and citizen of the Dominican Republic, entered the United States by passing through Puerto Rico without inspection. On November 3, 1987, a Bronx County, New York Court convicted Baez for the attempted criminal sale of a controlled substance. For this crime, Baez served six months in prison. Shortly thereafter, on March 12, 1990, a Worcester County, Massachusetts Court convicted Baez for the unlawful possession of a controlled substance with the intent to distribute. For this second crime, the court sentenced Baez to a prison term of five (5) to eight (8) years.

Because Baez was neither a citizen nor a native of the United States and he was convicted of two aggravated felonies, the Immigration and Naturalization Service ("INS") moved to deport him. On January 19, 1993, Baez appeared before an Immigration Judge ("IJ") at the Old Colony Correctional Institution in Bridgewater, Massachusetts for a deportation hearing.

At the inception of the hearing, the IJ immediately advised Baez of his right to counsel at his own expense or at the expense

of a legal services organization.[1] Furthermore, the IJ informed Baez that he was provided a list of legal organizations that may appear voluntarily to represent him in these proceedings. When Baez expressed an interest in obtaining the services of an attorney, the IJ suspended the hearing until February 16, 1993 explicitly providing Baez with time to procure legal counsel. Significantly, the IJ forewarned Baez that if Baez failed to obtain counsel he would have to represent himself at the hearing.

The following excerpt from the hearing demonstrates that the IJ provided Baez unambiguous advice regarding his right to counsel:

> Judge: In these proceedings you have the right to be represented by an attorney or other qualified representative at your own expense [sic] to the United States Government. If you can not afford to pay for an attorney, we have a list of organizations that may appear to represent you [sic] without your expense. Did you get that list, Sir?
>
> Baez: Yes.
>
> Judge: Do you wish to be represented by an attorney?
>
> Baez: Yes.
>
> Judge: O.K.. Then what we'll do then is continue your case over to a later date to give you a chance to get an attorney. The next hearing will be conducted on February 16, 1993 at nine (9) in the morning. It is up to you to call your own attorney or the organizations on this list to see whether or not they will agree to represent you. It is also up to you to notify them of the date and time of the next hearing.

*See* Tape Recording of the Immigration Hearing, Joint Exhibit I. Subsequent to this exchange, the IJ informed Baez about a mistake in the court documents. He advised Baez to inform his attorney about the error. The following conversation then took place:

> Judge: And you still have the list of organizations, Sir?
>
> Baez: Yes.

Judge: O.K. Now make sure you start calling them right away to see if they'll agree to represent you.

Baez: What if they don't come?

Judge: Then we'll just have to do your hearing without an attorney. O.K.?

Baez: Yes.

*Id.* This exchange indicates Baez' understanding of the judge's instructions. Once informed that he had to call the legal service organizations, Baez asked appropriately about the consequences of failing to obtain an attorney. Again, with absolute clarity, the IJ stated that the deportation hearing would take place without counsel for Baez.

At the second hearing, on February 16, 1993, the IJ inquired immediately whether Baez tracked down an attorney to represent his interests. Baez indicated that the attorneys he called would promise to meet with him but never show up. When asked, however, if he contacted all the organizations on the list, Baez responded: "Not all of them but plenty." The judge found that Baez had an adequate opportunity to locate counsel. As premonished, the IJ began the hearing despite the fact that Baez would have to represent himself. Consequently, the IJ apprised Baez of his rights: (1) the right to inspect documents that the INS wishes to enter into evidence; (2) the right to object for any reason to the introduction of those documents; (3) the right to cross-examine witnesses called by the INS; and (4) the right to present his own witnesses. Baez stated that he understood these rights.

The IJ then made several findings of fact. After each finding, the judge asked Baez whether the fact was true and Baez responded affirmatively to each one. Baez admitted that he was not a citizen or national of the United States. He confirmed that he was a native and citizen of the Dominican Republic who entered the United States on or about August 1, 1988 without inspection. Finally, he agreed that he was sentenced five (5) to eight (8) years by a Worcester County Court

---

**1.** Because Baez' native language is Spanish, he was assisted at the immigration hearing by an official interpreter.

for the possession of cocaine with the intent to distribute.

On the basis of these factors, the IJ found Baez deportable and unsuitable for relief from deportation. Accordingly, the judge told Baez that if he agreed with the decision, Baez could accept it as a final adjudication. The judge also informed Baez that if he disagreed with the decision, he had the right to appeal the holding to the Board of Immigration Appeals in Washington, D.C.. Interrupting the judge, Baez stated without hesitation and without being asked: "I agree with the decision."

True to his word, Baez never filed an appeal and was deported to the Dominican Republic on October 27, 1993. Almost two years later, on September 12, 1995, United States Border Patrol Agents discovered Baez at a sugar cane field in Rincòn, Puerto Rico. Without the express written consent of the Attorney General, Baez re-entered the United States allegedly in violation of the law. After being indicted for the crime of unlawful entry, Baez now moves to dismiss the indictment on the grounds that he was deprived of the right to counsel at the 1993 deportation hearing and that he never received an I–618 form.

## LEGAL DISCUSSION

Baez' collateral attack on his deportation hearing presents two distinct questions. First, whether there was a fundamental error in Baez' deportation proceedings, namely the denial of the right to counsel, that deprived Baez of his right to judicial review. Second, assuming that there was a fundamental error, whether that error alone is enough to deprive Baez of judicial review or whether Baez must establish that the error prejudiced the outcome of the deportation proceedings. This latter question is an issue of first impression in the First Circuit.

## A. DENIAL OF JUDICIAL REVIEW

The Government has charged Baez with unlawful entry into the United States pursuant to 8 U.S.C. § 1326 (1995). To prosecute Baez successfully for this crime, the Government must prove two elements: (1) Baez was arrested and deported previously; and (2) Baez entered the United States without inspection and without the Attorney General's authorization.[2] Because Baez' deportation followed a conviction for an aggravated felony, the possession of cocaine with the intent to distribute, he is subject to a prison sentence of twenty (20) years, an additional three year term of supervised release, and/or a fine not to exceed two-hundred and fifty thousand dollars ($250,000.00). 8 U.S.C. § 1326(b)(2).

Under the aegis of *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), Baez is launching a collateral attack on the first element of the crime, the underlying order deporting him from the United States. In *Mendoza–Lopez*, aliens convicted under section 1326 collaterally attacked the underlying deportation order claiming that the IJ inadequately informed them of the right to counsel and accepted their unintelligent waiver of their right to apply for a suspension of the deportation. Although Congress never authorized a collateral attack upon the deportation order in section 1326, the Supreme Court held that constitutional due process requires "*some meaningful review*" of the deportation hearing because this administrative inquiry plays a "critical role" in the imposition of criminal sanctions. *Id.*, 481 U.S. at 837–38, 107 S.Ct. at 2155.

The Court never discussed the fundamental errors that deny aliens due process in a

---

**2.** The statute governing the reentry of deported aliens reads:

> any alien who—(1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the At-

> torney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned ...

8 U.S.C. § 1326(a) (1995).

deportation hearing.[3] Instead, the Government asked the Court to assume that the inadequate explanation of the right to apply for relief from deportation and the right to appeal were fundamental errors in violation of due process. *Id.*, 481 U.S. at 839–40, 107 S.Ct. at 2156. After making this assumption, the Court found that the aliens were completely deprived of judicial review.[4] *Id.* Consequently, the Government could not rely on the deportation order as the first of the two necessary elements to obtain a conviction for unlawful entry into the United States.

■ *Mendoza–Lopez* does not provide guidance on whether the IJ deprived Baez of his right to counsel or define the parameters of the violation of this right. It is well-settled, however, that Baez did not have a Sixth Amendment right to counsel in his deportation hearing. *See Lozada v. I.N.S.*, 857 F.2d 10, 13 (1st Cir.1988); *I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984).

INS regulations, in contrast, provide more protection for the defendant's right to counsel than the Sixth Amendment. According to regulation 8 C.F.R. § 242.16(a) (1995), the IJ must advise the alleged alien of his right to counsel at no expense to the Government. The regulation states:

> (a) *Opening* The Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings and require him to state then and there whether he desires representation; advise the respondent of the availability of free legal services programs ... and organizations ...; ascertain that respondent has received a list of such programs, and a copy of Form I–618, Written Notice of Appeal Rights....

8 C.F.R. § 242.16(a) (1995). Baez does not dispute that the IJ acquainted him with his right to counsel. Nor does he disclaim that the IJ provided him with a list of legal service organizations that he could reach for possible representation.

■ Rather, Baez argues that at the second hearing the IJ failed to "require him to state then and there whether he desires representation." *Id.* Baez, however, is reading this requirement out of context. At the first deportation hearing, when Baez was brought before the Court without counsel, the IJ asked him directly whether he desired legal representation. When Baez responded affirmatively, the IJ provided him with close to one month to telephone the legal service organizations by suspending the hearing. Moreover, the IJ warned Baez that, if he arrived to the second hearing without representation, he would have to represent himself. It is at the second hearing, when Baez again arrived without counsel, that the IJ did not ask him whether he desired legal representation.[5] At that point in the proceedings, this question was unnecessary for several reasons.

First, the judge already asked the question and thereby satisfied this requirement in section 242.16(a). Second, the judge forewarned Baez that the second deportation hearing would begin with or without his legal counsel present. Baez was cognizant of this result. Third, Baez failed to follow the judge's instructions regarding the acquisition of legal counsel. Baez never called all of the legal service organizations on the list. The IJ appropriately refused to reward Baez' indolence with another deferred hearing.

Finally, and most importantly, the regulations are silent regarding Baez' situation. The regulations do not discuss what to do when an individual repeatedly asserts his

---

3. The Court stated: "We decline at this stage to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." *Mendoza–Lopez*, 481 U.S. at 839 n. 17, 107 S.Ct. at 2155 n. 17.

4. Which procedural errors completely deprive an alien of judicial review is a question of first impression in the First Circuit. *See* discussion *infra* Part B.

5. The fact that Baez did not exercise his right to counsel does not signify his unfamiliarity with the legal system. On the contrary, Baez had been intimately involved with the legal process on at least two prior occasions.

desire for legal representation but fails to acquire counsel. It leaves many questions unresolved. How many times should an IJ suspend the deportation hearings to afford the individual an opportunity to find counsel? Does an IJ grant an individual additional time to find counsel when she or he refuses to pursue counsel with due diligence? At what point in the proceedings, if at all, may the IJ overlook the individual's desire for counsel and proceed with the hearing?

Baez' solution would create a never-ending series of suspended deportation hearings. As long as the individual asserted his desire for an attorney, the IJ could not proceed with the hearing. The Court finds, however, that under the circumstances of this case Baez' interpretation is an unreasonable reading of the regulation.

According to Baez, not only did the IJ violate section 242.16, but the IJ violated section 242.13 by not suspending the deportation hearing a second time. Although dressed in a different hat, this is essentially the same claim under a different regulation. According to section 242.13, "[a]fter the commencement of the hearing, the Immigration Judge may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service." 8 C.F.R. § 242.13 (1995).

Baez overlooks, however, the IJ's continuance of the first deportation order. Baez, once again, reads the regulations broadly to require the IJ to suspend deportation hearing after deportation hearing until the respondent acquires legal counsel. Moreover, Baez never complied with the judge's recommendation that he call all the names of the legal service organizations. While the Court acknowledges that Baez was in prison, the record shows that he had access to a list of attorneys and the opportunity to make telephone calls. Baez, however, chose not to exhaust this option. As the Court stated before, Baez' solution would only reward this idle and slothful behavior.

Baez argues that this Court should reach the same result as *Montilla v. I.N.S.*, 926 F.2d 162 (2d Cir.1991). In *Montilla*, the Court held that the IJ committed a funda-mental error in violation of INS regulation 8 C.F.R. § 242.16 (1995). *Id.* at 169. The IJ held a deportation hearing and asked the respondent whether he desired an attorney to represent him. Unlike Baez, the respondent did not answer the question. He indicated that he was confused and was unclear about what he wanted to do. *Id.* at 164. The IJ, therefore, deferred the hearing until a later date. At this second hearing, the judge *never* asked the respondent again whether he wanted counsel. The IJ simply began the hearing. *Id.* As a result, the Second Circuit held that "Montilla never faced and decided" whether he wanted an attorney as required by the regulations. *Id.* at 169.

In contrast to *Montilla*, the record demonstrates that Baez was faced with the question of whether he wanted an attorney. Baez expressed his interest in legal counsel unequivocally. Moreover, his question to the judge about the consequences of not finding an attorney by the second hearing date indicates his cognizance of the question's meaning. Therefore, the finding in *Montilla* is inapposite. In this case, the IJ never violated INS regulations. In fact, the Court finds that the IJ followed them with close to mathematical precision.

In a decision subsequent to *Montilla*, the Second Circuit reached a conclusion that supports this Court's reading of the INS regulations and the finding that the IJ did not deprive Baez of his right to counsel. In *Hidalgo–Disla v. I.N.S.*, 52 F.3d 444 (2d Cir.1995), the Court evaluated a situation remarkably similar to the facts of this case. After a citizen of the Dominican Republic was convicted of an aggravated felony, the INS moved to deport him from the United States. At the initial deportation hearing, the IJ advised the respondent of his right to counsel, provided him with a list of attorneys, and inquired whether the respondent desired representation. When the individual indicated that he needed time to locate legal counsel, the IJ suspended the hearing. At the second hearing, a similar exchange took place. Once again, the respondent did not have an attorney. The IJ postponed this hearing one more time but forewarned the

respondent that the deportation proceedings would begin next time with or without counsel. *Id.* at 445–46.

At the third and final hearing, the respondent arrived once again without counsel. The IJ proceeded to evaluate the merits of the case and found the respondent deportable. The respondent's claim in *Hidalgo–Disla* resembles Baez' claim before this Court. The respondent argued that the IJ deprived him of his right to counsel because the IJ did not ask him at the third hearing whether he desired legal representation. The Second Circuit, however, dismissed this challenge as a frivolous *in forma pauperis* suit pursuant to 28 U.S.C. § 1915(d) (1995). It concluded that the IJ did not commit any error by proceeding with the deportation hearing without inquiring again whether the respondent wanted an attorney. In fact, the Court's holding echoes the sentiments of this Court:

> If an immigration judge could not proceed with a hearing, after two adjournments, without the alien's express waiver, an alien seeking to stave off deportation would be able to win an infinite number of adjournments, and would be better off appearing *without* a lawyer than with one. The Code of Federal Regulations does not mandate this kind of wheel-spinning.

*Id.* at 447. In distinguishing *Montilla,* the Court pointed out that the respondent faced the decision of whether he wanted an attorney. That is all the regulations require. As the Second Circuit found, the choice of whether to have counsel is not a choice of whether to hold a deportation hearing or not. *Id.* Just as this respondent in *Hidalgo–Disla* was unable to suspend his deportation for a third time, Baez may not postpone his hearing indefinitely until he locates counsel.

Finally, Baez attempts to draw an analogy between his case and *Castaneda–Delgado v. I.N.S.,* 525 F.2d 1295 (7th Cir.1975). The analogy, however, falls short of the mark. Baez states correctly that the Seventh Circuit held that the IJ's decisions deprived the respondents of their procedural due process rights by refusing to grant them a continuance of the second hearing to locate an attorney.[6] *Id.* at 1300. However, unlike Baez, the respondents in this case were only granted a two day extension to locate their attorney. *Id.* at 1297. They were not given twenty-eight days to track down an attorney from a list of several legal service organizations. Moreover, unlike Baez, the respondents were apparently never given this list of legal organizations to call. Finally, unlike Baez, at their second deportation hearing, the respondents reported their good faith efforts to locate counsel. *Id.* at 1299. The respondents did not ignore the IJ's order to telephone all the attorneys on a list provided to them. Accordingly, the Seventh Circuit's finding in *Castaneda–Delgado* that there was "sufficient cause" to suspend the deportation hearing for a second time is immaterial.

Upon close inspection of the deportation proceedings, the Court finds that the IJ did not commit any fundamental errors that deprived Baez of his right to counsel. Moreover, the Court finds that Baez understood his right of judicial review. At the end of the hearing, the IJ advised Baez of his right to appeal the decision to the Board of Immigration Appeals in Washington, D.C.. Baez, however, interrupted the IJ's instructions and stated without hesitation that he agreed with the decision. The IJ never asked Baez whether he intended to appeal. Baez volunteered this information.[7]

---

6. The respondents were deported for violating section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1970). Under two separate sections of this Act, the respondents had a statutory right to counsel at no expense to the Government. *See* Sections 242(b)(2) and 292, 8 U.S.C. §§ 1252(b) and 1362 (1970). The regulations explaining the right to counsel under this Act are substantially similar to the regulations at issue in this case. *See* 8 C.F.R. §§ 242.16(a) and 242.13 (1995).

7. Two opinions in the First Circuit provide support for this legal conclusion but are readily distinguishable. In both *United States v. Smith,* 14 F.3d 662 (1st Cir.1994) and *United States v. Cifuentes–Riascos,* 895 F.Supp. 21 (D.P.R.1995), the courts faced a similar factual scenario. Deported aliens were collaterally attacking their underlying deportation orders on the grounds that they were denied their right to counsel at the deportation hearing. In both cases, as in the action before this Court, the IJ advised the respondents of their right to counsel, provided

Baez contends that the IJ did not provide him with an I–618 form, entitled "Written Notice of Appeal Rights, in violation of section 242.1(c) and section 242.16(a). *See* 8 C.F.R. §§ 242.1(c) & 242.16(a) (1995). It is undisputed, however, that Baez was served with an Order to Show Cause prior to the hearing. Through this document, in addition to the IJ's verbal instructions, Baez was informed of his right to appeal the IJ decision.[8] The Court finds that Baez' waiver of his right to appeal was knowing, considered, and intelligent. The failure to serve Baez with the I–618 form is immaterial. *Cf. United States v. Fares,* 978 F.2d 52, 57 (2d Cir.1992) (finding that lack of written notice of right to appeal *and* lack of verbal notice from IJ constituted error); *United States v. Zaleta–Sosa,* 854 F.2d 48, 52 (5th Cir.1988) (IJ verbal notice of right to appeal, even without I–618 form, makes plain respondent's desire to waive appeal).

Finding no procedural error and that Baez failed to appeal the deportation order, the Court finds that Baez waived his right to judicial review. His motion to dismiss the charge of unlawful reentry on the grounds that the deportation hearing violated due process is hereby denied.

## B. ERROR AND PREJUDICE STANDARD

Even if the Court were to find that there was a fundamental procedural error in the deportation proceedings that foreclosed Baez' right of judicial review, the Court would reach the same result. A fundamental error alone, even when that error is a violation of the INS' own regulations, is insufficient to successfully challenge the validity of a deportation order. This Court joins the overwhelming majority of the circuits and finds that Baez must also demonstrate resulting prejudice from the error that altered the outcome of the proceedings.

Of the twelve circuit courts of appeals facing this issue, (1) seven circuits have adopted the "error and prejudice" standard: *Delgado–Corea v. I.N.S.,* 804 F.2d 261, 263–64 (4th Cir.1986) (finding no prejudice demonstrated from failure to provide respondents with list of attorneys in violation of INS regulations); *United States v. Palacios–Martinez,* 845 F.2d 89, 91 (5th Cir.), *cert. denied,* 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988) (fundamentally unfair deportation hearing must also eliminate alien's right to judicial review); *United States v. Espinoza–Farlo,* 34 F.3d 469, 471 (7th Cir.1994) (not reaching merits of respondent's claims because there was no showing of prejudice); *United States v. Polanco–Gomez,* 841 F.2d 235, 237 (8th Cir.1988) (applying error and prejudice standard and finding no fundamental error); *United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992) (en banc) (although government conceded that defendant unknowingly waived his right to appeal, no prejudice exhibited); *United States v. Meraz–Valeta,* 26 F.3d 992, 998 (10th Cir.1994) (even assuming defendant did not knowingly waive right to judicial review and he was denied effective assistance of counsel, no prejudice disclosed);

---

them with a list of attorneys, and suspended the original deportation hearing. Just as in Baez' case, both respondents arrived at the second hearing without counsel and the IJ proceeded to evaluate the merits of the case. Unlike Baez, however, both initially appealed the IJ decisions with the help of counsel. Although they later withdrew their respective appeals, their partial exercise of their right to appeal was sufficient evidence of their understanding of the right to judicial review. Consequently, both courts held that the respondents waived their right to review any alleged procedural errors in the deportation hearings. In the case at bar, a similar analysis of Baez' responses to the IJ's instructions and questions, indicates that Baez understood the meaning of the deportation hearing. He understood his right to appeal but voluntarily accepted the IJ's decision as final.

8. The Government apparently concedes that Baez was not given the I–618 form. According to the Government, on June 3, 1992, the INS issued a memorandum stating that the reverse side of the Order to Show Cause document replaces the I–618 form. Although the Court was unable to verify this claim, the IJ's verbal instructions to Baez regarding his right to appeal cured the technical error of failing to provide Baez with the I–618 form. Baez' interruption of the IJ's instructions demonstrates a clear understanding of his right to appeal. Moreover, as explained later, even assuming that the INS violated section 242.16(a), the violation did not prejudice the outcome of the proceedings. *See* discussion *infra* Part B.

*United States v. Holland,* 876 F.2d 1533, 1537 (11th Cir.1989) (assuming that defendant was deprived of rights including the right to counsel, no prejudice demonstrated); (2) one circuit has rejected the "error and prejudice" standard and applied the mere "error" standard, *Montilla v. I.N.S.,* 926 F.2d 162, 168–69 (2d Cir.1991) (its per se error when INS violates its own regulations);[9] and (3) four circuits, including the First Circuit, have yet to confront this issue.

The divergence of opinion reflects the unclear approach of the Supreme Court in *Mendoza–Lopez.* In an unconventional procedural twist, the Court assumed that the procedural errors in the deportation hearing *completely* deprived the aliens of judicial review. Whether all procedural errors completely deprive aliens of judicial review or just those that materially prejudice the outcome is ambiguous.

The language in *Mendoza–Lopez* can be read to support the application of either standard. For example, the Court first assumed that the errors violated due process and then stated: "If the violation of respondents' rights that took place in this case *amounted to a complete deprivation of judicial review* of the determination, that determination may not be used to enhance the penalty for unlawful entry under § 1326." *Id.,* 481 U.S. at 840, 107 S.Ct. at 2156 (emphasis added). On the one hand, this language may imply that certain errors amount to a complete deprivation of judicial review whether or not they prejudice the outcome of the proceedings. On the other hand, this language may imply that only those errors that prejudice the result completely deprive an individual of judicial review.

Furthermore, the language in a footnote creates the same dilemma. *Id.,* 481 U.S. at 839 n. 17, 107 S.Ct. at 2155 n. 17. Citing *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct.

3101, 3106, 92 L.Ed.2d 460 (1986), in which the Court circumscribed which criminal procedural errors may be harmless and which errors required an automatic reversal, the Court refused to list which errors in a deportation hearing rendered the proceeding fundamentally unfair. *Id.* The Court may have believed that some errors in a deportation proceeding are fundamentally unfair because they prejudice the outcome. At the same time, it is plausible that the Court concluded that some errors, regardless of their actual impact, required an automatic reversal of the proceedings.

█ In light of this ambiguity, the Court finds the reasoning of the majority of the circuit courts persuasive and adopts the "error and prejudice" standard. Under this standard, the defendant has the initial burden of demonstrating that but for the procedural error the outcome of the deportation hearing would have been different. An error which has a material effect on the proceedings presents a strong candidate for prejudice. Should the defendant satisfy this burden with a *prima facie* showing of prejudice, the burden of proof shifts to the INS. The INS must show, irregardless of the error, the defendant would have been deported. *See United States v. Cerda–Pena,* 799 F.2d 1374, 1378–79 (9th Cir.1986).

█ In the instant case, Baez neither argues nor could successfully assert that an error prejudiced the outcome of the deportation proceedings in a material manner. Even assuming Baez was denied the right to counsel or that the absence of the I–618 form foreclosed his right to appeal, he admits that: (a) he is neither a citizen nor a national of the United States; (b) he entered the United States on or about August 1, 1988 without inspection; and (c) he was convicted of an aggravated felony. Baez' counsel could not have extinguished or altered these facts. Moreover, his verbal waiver of his right to

---

9. The Second Circuit has adopted different standards contingent on the type of fundamental error. Where the error is a violation of the INS' own regulations, the Court applies the per se "error" standard. *See Montilla,* 926 F.2d at 168–69. The Second Circuit adopts this standard from a long line of cases concerning an agency's violation of its own administrative regulations. In contrast, where the error is a failure to inform the respondent about the right to appeal the deportation order, the Court applies the "error and prejudice" standard. *See United States v. Fares,* 978 F.2d 52, 57 (2d Cir.1992). The Court adopted the latter standard from the Supreme Court's decision in *Mendoza–Lopez.* This Court rejects this bisected approach.

appeal was knowing and intelligent. A direct appeal of the IJ's decision would have yielded the same result.[10] The Court finds, therefore, that Baez is unable to make a *prima facie* showing of prejudice.

## CONCLUSION

A meticulous assessment of Baez' first and second deportation hearings demonstrates conclusively that the IJ followed both the letter and the spirit of the INS regulations. The IJ advised Baez of his right to counsel, provided him with a list of legal services, asked him whether he desired legal counsel, and informed him of his right to appeal the decision. No more was required. The IJ did not violate Baez' due process rights when he refused to suspend the second deportation hearing. And even if Baez was deprived of his right to counsel and the I–618 form, these errors did not prejudice the outcome of the proceedings. Consequently, the Court hereby **denies** Baez' motion to dismiss the charge of unlawful reentry into the United States.

**IT IS SO ORDERED.**

---

10. Courts which have either (a) found that the defendants were deprived counsel at their deportation hearings or (b) assumed the existence of this fundamental error have reached the same result. *See United States v. Torres–Sanchez,* 68 F.3d 227, 231 (8th Cir.1995); *United States v. Perez–Ponce,* 62 F.3d 1120, 1122 (8th Cir.1995); *Mullen–Cofee v. INS,* 976 F.2d 1375, 1380 (11th Cir.1992); *United States v. Cerda–Pena,* 799 F.2d 1374, 1379 (9th Cir.1986); *Cobourne v. INS,* 779 F.2d 1564, 1566 (11th Cir.1986). Similarly, courts have found that the procedural defect of failing to provide the respondent with the I–618 form did not prejudice the outcome of the deportation hearing. *See Perez–Ponce,* 62 F.3d at 1122; *United States v. Espinoza–Farlo,* 34 F.3d 469, 471–72 (7th Cir.1994); *United States v. Fares,* 978 F.2d 52, 57 (2d Cir.1992); *United States v. Holland,* 876 F.2d 1533, 1537 (11th Cir.1989); *United States v. Zaleta–Sosa,* 854 F.2d 48, 52 (5th Cir.1988).