USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1403 UNITED STATES OF AMERICA, Appellant, v. DONALD JESUS LOAISIGA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Cyr and Boudin, Circuit Judges, ______________ and Ponsor,* District Judge. ______________ ____________________ Jacqueline Ross, Assistant United States Attorney, with whom ________________ Donald K. Stern, United States Attorney, and Robert E. Richardson, ________________ _____________________ Assistant United States Attorney, were on briefs for the United States. Jeffrey M. Smith, by Appointment of the Court, with whom Peters, ________________ ______ Smith & Moscardelli was on brief for appellee. ___________________ ____________________ January 15, 1997 ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. Donald Loaisiga was indicted for _____________ reentering the United States after having been deported. 8 U.S.C. 1326. Prior to trial, the district court granted Loaisiga's motion to suppress evidence of his prior deportation, an essential element of the offense, on the ground that the deportation hearing was fundamentally flawed. The government now appeals in advance of trial, as permitted by 18 U.S.C. 3731, to challenge this ruling. The pertinent facts are almost all undisputed. In July 1987 Loaisiga came to the United States from Nicaragua, entering as an illegal immigrant. He was granted political asylum in April 1989 and thereafter attained permanent resident status. In March 1992, Loaisiga pled guilty in Massachusetts state court to charges of armed assault with intent to murder and several lesser related offenses. He received a 10-year suspended sentence and two years of probation. On March 23, 1994, the Immigration and Naturalization Service served on Loaisiga a show-cause order, proposing to deport him because he had been convicted of an aggravated felony. 8 U.S.C. 1251(a)(2)(A)(iii). Six days later, on March 29, Loaisiga appeared for a hearing before an INS immigration judge who explained the purpose of the hearing, told Loaisiga that he had a right to be represented by -2- -2- counsel at no expense to the government, and confirmed that hehadbeen givenalistof entitiesthatprovidefree legalservices. The immigration judge asked Loaisiga whether he wanted counsel and after several unclear replies, Loaisiga said firmly that he did not. Reminded that Loaisiga had an automatic right to a 14-day delay after service of the show- cause order, 8 U.S.C. 1252b(b)(1), the immigration judge asked Loaisiga whether he wanted to waive that right. Loaisiga said he did not. The judge then rescheduled the hearing for April 19, 1994, gave Loaisiga another list of legal service providers, and urged him to obtain an attorney. At the April 19 hearing, the immigration judge inquired at the outset whether Loaisiga had arranged for counsel. Loaisiga told the immigration judge that no one had been willing to take his case. The immigration judge said that Loaisiga would have to represent himself and proceeded with the hearing. Proof of Loaisiga's state conviction was offered, and the judge ultimately ordered that Loaisiga be deported, as required by 8 U.S.C. 1251(a)(2)(A)(iii). The immigration judge told Loaisiga that he could appeal to the Board of Immigration Appeals and asked whether he wanted to do so. Loaisiga said he did not. The immigration judge said nothing more about an appeal, omitting any reference to the time to appeal (within ten days) or the possibility of counsel on appeal (allowed, as before, at the -3- -3- respondent's own expense). Loaisiga made no effort to appeal, although his father unsuccessfully sought an administrative stay, and in due course Loaisiga was deported. After his deportation, Loaisiga returned to the United States. He was arrested and charged under 8 U.S.C. 1326 with reentry after deportation. That statute does not suggest that the deportation can be collaterally attacked in the criminal case. However, in United States v. Mendoza- _____________ ________ Lopez, 481 U.S. 828 (1987), the Supreme Court ruled that such _____ a collateral attack would be permitted if the deportation was fundamentally flawed and if the deportee had been effectively ____ denied a right to appeal the original deportation order. Prior to trial in the district court, Loaisiga sought to invoke Mendoza-Lopez to obtain dismissal of the case or _____________ suppression of evidence of his deportation. He argued that he had not been adequately advised of his right to counsel at the deportation hearing and that his appeal rights had been frustrated in various respects. After a hearing on November 21, 1995, the district court granted the motion to suppress on two different grounds. The government then brought this appeal. 1. The district court's main reason for granting the motion to suppress was that the immigration judge failed to advise Loaisiga at the April 19, 1994, hearing that he had a right to representation by counsel. There is no -4- -4- constitutional right to appointed counsel in a deportation proceeding. Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988). ______ ___ But Congress has provided that a respondent may obtain his own counsel. 8 U.S.C. 1252(b)(2). INS regulations, 8 C.F.R. 242.16(a), provide that at the hearing  [t]he Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice . . . and require him to state then and there whether he desires representation; [and] advise the respondent of the availability of free legal services programs . . . located in the district . . . ; [and] ascertain that the respondent has received a list of such programs . . . .  We will assume without deciding that it would be a fundamental flaw under Mendoza-Lopez to fail to advise one _____________ threatened with deportation of his statutory right to self- obtained counsel. See United States v. Campos-Asencio, 822 ___ _____________ ______________ F.2d 506, 509-10 (5th Cir. 1987). But in this case Loaisiga was told at the initial hearing on March 29 that he had a right to provide his own counsel; in fact, the immigration judge asked six questions on the subject because Loaisiga was at first unclear in expressing his desires. Two lists of providers were furnished. When the government made this argument to the district court, the district court replied that the advice provided at the March 29 hearing did not count. Congress, the court pointed out, has required a 14-day period to elapse (unless waived) between the show-cause order and the hearing, 8 -5- -5- U.S.C. 1252b(b)(1), and here the March 29 hearing occurred only six days after the show-cause order. In the district court's view, the advice had to be given at the outset of the April 19 hearing, after the 14-day period, which it was not. The district court's reasoning, presenting a legal issue that we consider de novo, see United States v. Smith, 14 F.3d _______ ___ _____________ _____ 662, 664-65 (1st Cir. 1994), seems to us overly formal. Loaisiga was plainly told several times at the March 29 hearing of his right to self-obtained counsel, and he was then given three weeks to seek counsel. Thus, both objectives reflected in the statute and regulation--advising the respondent of his statutory right to obtain counsel and providing him the statutory 14 days to do it--were satisfied in this case.  There was nothing unlawful in convening the March 29 hearing, even assuming that would matter. By statute, Loaisiga was free to waive the 14-day delay, 8 U.S.C.  1252b(b)(1), although he chose not to do so. By that time, he knew of his right to obtain counsel and, furnished with two lists, had three weeks to seek counsel. It appears that he made unsuccessful efforts to obtain free assistance. It is plain that the district judge was concerned that, regardless of the formalities in providing advice and allowing the 14-day period, the immigration judge had done too little at the April 19 hearing to help Loaisiga in his -6- -6- quest for counsel and assuring him enough time to find one. "Suppose," the district judge said, "[Loaisiga] had been in the hospital ill. Suppose . . . he had been disabled for all of that three weeks. There's no opportunity here given for an explanation of what he had done in that three weeks."  Such solicitude is common in federal criminal proceedings. For example, in taking a guilty plea, the court not only complies with numerous formal requirements but seeks to be certain that the defendant knows what he is doing, has been adequately counseled, and is guilty of the crime. Fed. R. Crim. P. 11. One might think that deportation, whose effects are more enduring than many convictions, would follow this pattern. But deportations are civil matters, exempt from Sixth Amendment protections, and they are primarily conducted by administrative bodies and not by courts. Accordingly, it has been left primarily to Congress and to INS regulations to dictate the course of proceedings--which both bodies have done in some detail. See 8 U.S.C. 1252b; 8 C.F.R. part ___ 242. Courts normally require nothing more in the way of procedural protection, except to prevent flagrant abuses-- __________ normally those rising to the level of due process violations. United States v. Palacios-Martinez, 845 F.2d 89, 92 (5th ______________ _________________ Cir.), cert. denied, 488 U.S. 844 (1988). ____________ -7- -7- Loaisiga said nothing at the April 19 hearing to suggest that he had been ill or disabled, or even that he wanted more time and had some reason to think that he might thereby obtain counsel. Nothing in the statute or regulations required further inquiry. And absent some signal from Loaisiga--such as a plausible request for a further delay--we do not think that it was even close to a due process violation for the immigration judge to move on to the merits. Cf. United States v. Baez-Ortega, 906 F. Supp. 740, 744-45 ___ ______________ ___________ (D.P.R. 1995), aff'd, 95 F.3d 1146 (1st Cir. 1996) (table).1 _____ 2. The district court gave a second reason for granting the motion to suppress, which focused upon a different stage of the INS proceeding. The district court said briefly that even assuming that the March 29 advice carried over to the April 19 hearing, due process required that Loaisiga be advised again at the close of the April 19 _____ hearing of his right to obtain his own counsel for an appeal. _____________ In the court's words: The rights [to self-obtained counsel and time to seek one] may not be as concrete and as easily and well understood at an earlier point as they are at that point when the determination about deportation is being made and the order is being entered. That's the time at which due process requires that notice of the alien's rights, including rights to  ____________________ 1Only the Ninth Circuit has ever suggested otherwise, and its ruling, on more extreme facts, occurred before Congress added the 14-day waiting period. Rios-Berrios v. ____________ INS, 776 F.2d 859, 863 (9th Cir. 1985). ___ -8- -8- representation of counsel and rights to appeal, must be given.  By regulation, 8 C.F.R. 242.19(b), the respondent must be told of his right to appeal from the deportation order; but there is no statute or regulation prescribing that he be told anything more if he says on the spot that he does not wish to appeal. When the immigration judge ordered deportation at the close of the April 19 hearing, Loaisiga was told that he had a right to appeal, and he did say on the spot that he did not wish to appeal. Thus, Loaisiga got what the regulation requires and nothing more. Ordinarily, in a civil proceeding, the judge is not obligated to say anything to a pro se losing party about _______ appeal rights, let alone about the right of the party to provide his own counsel for appeal. Deportations are obviously special, and it would certainly be admirable administrative practice to remind the respondent of his continuing right to representation at his own expense. Whether failure to do so, where the respondent has just said that he does not wish to appeal, is so unfair as to violate the Constitution is quite another matter. One might ask why such advice is even pertinent if the respondent flatly disclaims any desire to appeal, especially where there does not appear to be much about which to appeal. Still, a respondent's inclination to appeal might be affected by being told (again) that he could be represented by -9- -9- counsel; Loaisiga has filed an affidavit saying that this is so in his case, although such self-serving statements years after the fact are not very compelling. In all events, this interesting issue need not be decided here. At least for a collateral attack on a now-final __________ deportation order, the defendant must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred. Although nuances differ, a prejudice showing appears to be required in every circuit that has considered _____ such collateral attacks during a prosecution under section 1328.2 Several courts have found this requirement implicit in Mendoza-Lopez, pointing out that absent prejudice, a _____________ proceeding cannot be deemed fundamentally unfair. E.g., ____ Espinoza-Farlo, 34 F.3d at 471. ______________ Even a showing of prejudice would not suffice if Loaisiga had obtained a fair opportunity to file a direct appeal from his deportation order. In such a case, the appeal is the means to correct error and a later attack in the criminal proceeding is barred. Mendoza-Lopez, 481 U.S. _____________  ____________________ 2United States v. Fares, 978 F.2d 52, 57 (2d Cir. 1992); _____________ _____ Figeroa v. INS, 886 F.2d 76, 78 (4th Cir. 1989); United _______ ___ ______ States v. Encarnacion-Galvez, 964 F.2d 402, 408 (5th Cir. ______ __________________ 1992); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th _____________ ______________ Cir. 1994); United States v. Polanco-Gomez, 841 F.2d 235, 237 _____________ _____________ (8th Cir. 1988); United States v. Proa-Tovar, 975 F.2d 592, ______________ __________ 595 (9th Cir. 1992) (en banc); United States v. Meraz-Valeta, _______ _____________ ____________ 26 F.3d 992, 998 (10th Cir. 1994); United States v. Holland, _____________ _______ 876 F.2d 1533, 1537 (11th Cir. 1989). -10- -10- at 839. But Loaisiga says that his opportunity to appeal was undercut by the alleged due process violation, namely, the failure to remind him of his right to counsel for an appeal. And we find it harder to resolve that issue than to decide that, in all events, he has made no showing of prejudice. The "right to counsel," says Loaisiga, is an exception to the general rule that prejudice must be shown. But argument by talisman is not very productive; impairments of the right to counsel differ in degree and context, and such differences affect whether and to what extent prejudice must be shown. See Scarpa v. Dubois, 38 F.3d 1, 12 (1st Cir. ___ ______ ______ 1994), cert. denied, 115 S. Ct. 940 (1995). Perhaps there ____________ may be deportations where a denial of counsel was so flagrant, and the difficulty of proving prejudice so great, as to argue for presuming harm. Cf. Lozada, 857 F.2d at 13. ___ ______ But this is not such a case. If there was error at all in the deportation, it was a failure to repeat advice already given, where no such repetition was required by statute, regulation or direct precedent. And judging whether prejudice occurred to Loaisiga is especially easy in light of the statute that governed the deportation and the admitted facts of this case. 8 U.S.C. 1251(a)(2)(A)(iii) provides that one convicted of an aggravated felony "shall" be deported, providing little room to maneuver; and Loaisiga has never disputed that his -11- -11- conviction for assault with intent to murder fits the "aggravated felony" pigeon-hole. Loaisiga's brief closes by saying that if prejudice is required, he can point to avenues of relief available to him which counsel might have pursued: listed are claims that Loaisiga was entitled to consular contact with the Nicaraguan government, that the underlying conviction in state court might have been set aside, that an application for "asylum or other similar relief" might have been pursued, and that 8 U.S.C. 1251(a)(2)(A)(iii) might have been challenged on constitutional grounds (e.g., because Loaisiga's suspended ____ state-court sentence shows that he posed no danger). The government's reply brief parries each thrust. It says, for example, that Loaisiga was ineligible by statute for "withholding of deportation" relief, which otherwise prohibits deportation to countries where the alien's life will be threatened. 8 U.S.C. 1253(h)(2)(B). It also appears that Loaisiga was debarred from discretionary "suspension of deportation" relief, available in hardship cases, id. 1254(a)(2), or for a discretionary "waiver" from ___ the Attorney General, id. 1182(c), because he had not lived ___ in the United States for a sufficiently long period. Loaisiga says that if appellate proceedings had dragged on long enough, he might have met the time requirements. But even if this is so, there is no hint of a showing that -12- -12- Loaisiga would have met the explicit criteria under the suspension statute or that there is any reason to believe that the Attorney General's discretion would have been exercised in his favor, as required under both 8 U.S.C.  1254(a)(2) and 8 U.S.C. 1182(c). Similarly, nothing suggests that Loaisiga could have succeeded in a timely effort to vacate his state court conviction, nor that he could have prevailed in a constitutional attack on 8 U.S.C. 1251(a)(2)(A)(iii). See ___ Mosquera-Perez v. INS, 3 F.3d 553, 559 (1st Cir. 1993). ______________ ___ These possibilities are a tribute to defense counsel's energy and imagination. But based on Loaisiga's showing, we have no reason to think that Loaisiga had any realistic chance of success in avoiding deportation by appeal or in ancillary proceedings. Finally, we turn to Loaisiga's related argument that his appeal rights were unfairly impaired because no mention was made in the April 19 hearing of the 10-day period for appeal. See 8 C.F.R. 242.21. The government has asked us to take ___ judicial notice of a written form, allegedly given to Loaisiga at the time of the show-cause order, which outlined his appeal rights including the 10-day period for appeal (and the right to employ counsel). Loaisiga objects, saying that no such evidence was presented to or relied upon by the district court. -13- -13- This judicial-notice dispute does not affect the outcome. It is very doubtful that, as a matter of due process, a respondent must be told of the time within which to appeal where, as here, he has expressly disclaimed a desire to appeal. But even if we assumed otherwise, a showing of prejudice would still be required. And, for reasons already set forth, Loaisiga has provided us no reason to think that an appeal would have altered the outcome. We appreciate the concerns of the distinguished district judge who presided in this case. But, in our view, there was no showing of prejudicial error in the deportation proceedings that would justify the collateral attack here attempted. The order of suppression is reversed and the ________ matter is remanded to the district court for further ________ proceedings. It is so ordered. _________________ -14- -14-