22-1566-cv
*United States v. Schiller*

# In the
# United States Court of Appeals
# For the Second Circuit

——————

August Term 2022
No. 22-1566-cv

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WALTER SCHILLER AND DENISE SCHILLER,
*Defendants-Appellants.*

——————

ARGUED: JUNE 7, 2023
DECIDED: AUGUST 30, 2023

——————

Before: LIVINGSTON, *Chief Judge*, CHIN and KAHN, *Circuit Judges.*

————————

Defendants-Appellants appeal from the judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J.*) requiring them to pay a tax assessment in the amount of $112,324.18, claiming that the enforcement action was premature because the Internal Revenue Service referred the matter to the Department of Justice before formally rejecting Defendant-Appellants' proposed installment agreement, in violation of 26 U.S.C. § 6331 and the corresponding Treasury Regulations. We reject this contention and, accordingly, **AFFIRM** the judgment of the district court.

_____

LARRY KARS, Larry Kars P.C., New York, NY, *for Defendants-Appellants Walter Schiller and Denise Schiller*.

JULIE CIAMPORCERO AVETTA, Atty., Tax Division, Dept. of Justice, Washington, D.C. (David A. Hubbert, Deputy Asst. Atty. Gen., Joan I. Oppenheimer, Atty., Tax Division, Dept. of Justice, Washington, D.C., and Breon Peace, U.S. Atty. E.D.N.Y, *on the brief*), *for Plaintiff-Appellee United States of America*.

_____

MARIA ARAÚJO KAHN, *Circuit Judge*:

Defendants-Appellants, Walter and Denise Schiller, appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J.*) awarding the United States $112,324.18, plus statutory additions and interest, in connection with an unpaid tax assessment from 2007. The district court granted summary judgment in favor of the government, notwithstanding the fact that the Internal Revenue Service (the "IRS") referred the assessment to the Department of Justice (the "DOJ") before formally rejecting defendants' proposed installment agreement. Defendants contend that this referral violated the provisions of the

2

Internal Revenue Code and the implementing Treasury Regulations that curb the IRS's collection activities while a proposed installment agreement remains on the table. *See* 26 U.S.C. § 6331(i), (k); 26 C.F.R. § 301.6331-4(b)(2). For the reasons that follow, we agree with the district court's conclusion that the referral does not invalidate and does not otherwise bar the government's suit to collect the tax debt. Accordingly, we affirm.

## BACKGROUND

The relevant facts are undisputed. Defendants, a married couple, failed to pay $91,945 in taxes as reported on their 2007 joint tax return. On November 3, 2008, the IRS jointly and severally assessed defendants $112,324.18 in taxes, penalties, and interest. Defendants concede that these calculations are correct. As noted by the district court, the debt remains unpaid and there is no record of further activity on the assessment for nearly a decade.

On December 7, 2017, defendants proposed an installment agreement to the IRS, *see* 26 U.S.C. § 6159,[1] offering to pay $361 per month toward their tax

---

[1] The Internal Revenue Code authorizes the Secretary of the Treasury to "enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability." 26 U.S.C. § 6159(a).

liabilities.[2]  An IRS agent visited defendants on August 7, 2018, to discuss the tax debt.  IRS internal records indicate that, by September 19, 2018, the IRS had determined that the proposed installment agreement should be rejected.

On October 30, 2018, defendants received a letter from the IRS formally rejecting their proposal on the grounds that they had "sufficient cash or equity in assets to fully or partially pay the balance owed."  J. App'x 29.  The letter explained that "if [defendants] previously received a notice accepting [their] installment agreement proposal, such acceptance was not authorized and any acceptance is withdrawn" and that, to the extent accepted, the agreement was terminated.  *Id.* Finally, the letter outlined the procedure defendants were to follow if they did not agree with the decision to deny or terminate the installment agreement, which included filing a request for an administrative appeal within 30 days. Unbeknownst to defendants, by the time they received this letter, the IRS had already referred the matter to the DOJ to initiate collection proceedings in court. Defendants, who were not aware of the timing of the referral to the DOJ, did not

---

[2] The record indicates that this proposal was, at least initially, marked as approved by the IRS in its online system and that defendants had even made some payments pursuant to it in 2018.  The parties agree, however, that this designation was the result of a clerical mistake.

take any of the steps outlined in the letter or seek an appeal of the decision by the November 29, 2018, deadline.

On November 30, 2018, following the expiration of the 30-day period for administrative appeals from the IRS's formal rejection or termination of the installment agreement, the DOJ commenced this action seeking to reduce defendants' 2007 unpaid federal income taxes to a civil judgment. *See* 26 U.S.C. § 6331(k)(2)(B); 26 C.F.R. § 301.6331-4(a)(1). The parties filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). In their motion, defendants argued that the IRS had violated both the applicable statutory and regulatory provisions, *see* 26 U.S.C. § 6331 and 26 C.F.R. § 301.6331-4(b)(2), by referring this case to the DOJ before formally rejecting their proposed installment agreement. Although conceding that the referral was premature under the applicable Treasury Regulation, the government contended that it was entitled to judgment as a matter of law because it complied with the statutory requirement by commencing this civil action 31 days after the formal rejection of defendants' proposed installment agreement.

The district court granted the government's motion for summary judgment and denied defendants' cross-motion on June 1, 2022. The court's written opinion

aptly described the narrow legal question before it as "whether the IRS's concededly premature referral serves to bar this suit and entitles defendants to summary judgment, even though the Internal Revenue Code imposes no restrictions on the IRS's ability to refer cases to [the] DOJ while installment agreements are pending or in effect." *United States v. Schiller*, No. 18-CV-6840, Dkt. No. 32 at 8 (E.D.N.Y. June 1, 2022). Noting the absence of case law on point, the district court rejected defendants' claim that the IRS's referral violated the express terms of 26 U.S.C. § 6331 because the plain text of that statute does not mention referrals. *Id.* at 8–9. Rather, the district court held that the statute prohibits only the commencement of proceedings in court during the pendency of an installment agreement. *Id.* at 9–11.

With regard to the regulatory provision, although the district court recognized that the IRS had facially violated 26 C.F.R. § 301.6331-4(b)(2), which prohibits referrals so long as a taxpayer-proposed installment agreement remains pending, it declined to read that regulation as "barring a collection action exclusively because of a technical, non-prejudicial error on the part of the government." *Id.* As a result, the district court concluded that "[the fact that] the IRS referred this case to [the] DOJ while defendants' installment agreement

6

request was pending does not, standing alone, bar this action." *Id.* at 11. Defendants now appeal to this court.

## STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo* where . . . the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other." *Roberts v. Genting N. Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (quoting *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 943 F.3d 568, 576–77 (2d Cir. 2019)); *see also Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 49 F.4th 105, 112 (2d Cir. 2022). Summary judgment is proper only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Atlas Air, Inc.*, 943 F.3d at 577; *see also Capobianco v. City of New York*, 422 F.3d 47, 54–55 (2d Cir. 2005) (summary judgment is appropriate "only if . . . on the record presented, considered in the light most favorable to [the non-moving party], no reasonable [fact-finder] could find in [its] favor" (citing *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 98–99, 103 (2d Cir. 2003))).

## DISCUSSION

We begin by outlining the applicable statutory and regulatory framework. The United States has "a number of distinct enforcement tools available . . . for the

collection of delinquent taxes." *United States v. Rodgers*, 461 U.S. 677, 682 (1983); *see* 26 U.S.C. § 6321 (permitting liens); 26 U.S.C. § 6331(a) (providing for administrative levies).[3] One such tool allows the government to bring a civil action in order to collect an unpaid tax assessment via a court judgment. *See* 26 U.S.C. §§ 6502(a), 7401, and 7402(a); *Rodgers*, 461 U.S. at 682 (noting that these statutory provisions permit the government to "simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor"). Civil actions of this nature may not be commenced "unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." 26 U.S.C. § 7401.[4] The Internal Revenue Code thus requires two distinct acts by two distinct actors in order to commence a civil action for the

---

[3] The Internal Revenue Code defines a federal tax lien as arising from unpaid taxes. 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."). "A federal tax lien . . . is not self-executing, and the IRS must take affirmative action to enforce collection of the unpaid taxes." *EC Term of Years Tr. v. United States*, 550 U.S. 429, 430–31 (2007) (internal quotation marks, alterations, and citation omitted).

A levy, on the other hand, is defined as a "legally sanctioned seizure and sale of property." *Id.* at 431 (internal quotation marks and citations omitted); *see also* 26 U.S.C. § 6331(b) (defining levy as including "the power of distraint and seizure by any means"). Unlike a lien-foreclosure action, a levy typically "does not require any judicial intervention, and it is up to the taxpayer, if he so chooses to go to court if he claims that the assessed amount was not legally owing." *Rodgers*, 461 U.S. at 682–83.

[4] As used in the Internal Revenue Code, "Secretary" refers to "the Secretary of the Treasury or his delegate." 26 U.S.C. § 7701(11).

collection or recovery of taxes: (1) the authorization or sanction by the Secretary of the Treasury to bring a suit, and (2) the direction by the Attorney General to commence the action.

The Internal Revenue Code also imposes restrictions on the government's use of enforcement tools during the pendency of an installment agreement. To begin, the applicable statutory provisions prohibit the IRS from levying (*i.e.*, seizing) "the property or rights to property of any person with respect to any unpaid tax" during: (1) the period that an offer for an installment agreement under 26 U.S.C. § 6159 for payment of such unpaid tax is pending with the IRS; (2) the 30 days following either a rejection or termination of an installment agreement; (3) the period that an installment agreement is in effect; and (4) if an appeal from the rejection or termination of an installment agreement is filed, the period that such an appeal is pending. 26 U.S.C. § 6331(k)(2). Treasury Regulations also make clear that "[a] proposed installment agreement becomes pending when it is accepted for processing . . . [and] remains pending until the IRS accepts the proposal, the IRS notifies the taxpayer that the proposal has been rejected, or the proposal is withdrawn by the taxpayer." 26 C.F.R. § 301.6331-4(a)(2). Two other, interrelated provisions of the Internal Revenue Code combine to bar the government from

instituting collection proceedings in court when an installment agreement is in the picture. *See id.* § 6331(i)(4)(A), (k)(3)(A).[5] The parties agree that the combined effect of these interrelated provisions is that "[n]o proceeding in court for the collection of any unpaid tax . . . shall be begun by the Secretary," *id.* § 6331(i)(4)(A), while a proposed installment agreement remains pending, *id.* § 6331(k)(2)–(3).

Regulations promulgated by the Treasury Department go a step further, combining the statutory requirements outlined above to delay *even referrals* so long as a taxpayer's offer for installment payments remains on the table. Specifically, the regulation states, in relevant part, that "the IRS will not *refer* a case to the [DOJ] for the commencement of a proceeding in court, against a person named in an installment agreement or proposed installment agreement, if levy to collect the liability is prohibited . . . ." *Id.* § 301.6331-4(b)(2) (emphasis added); *see also* 26 U.S.C. § 6331(k)(2)(A) (prohibiting levy while taxpayer offer of installment

---

[5] The first provision, § 6331(i)(4)(A), provides that "[n]o proceeding in court for the collection of any unpaid tax to which paragraph (1) applies"—referring to collection actions concerning unpaid divisible taxes (not implicated here)—"shall be begun by the Secretary during the pendency of a proceeding under such paragraph." 26 U.S.C. § 6331(i)(4)(A). The other relevant provision, § 6331(k)(3)(A), specifically cross-references and incorporates § 6331(i)(4)(A)'s prohibition on collection proceedings. *See id.* § 6331(k)(3)(A) (providing that "[r]ules similar to the rules of . . . [§ 6331(i)(4)] . . . shall apply for purposes of this subsection"). As § 6331(k) pertains, in relevant part, to installment agreements, this cross-reference operates to suspend the government's power to begin a collection proceeding while a proposed installment agreement is pending.

payments remains pending). Although the precise date of the referral to the DOJ in this case is unknown, the government concedes that the referral was made prior to the formal rejection of defendants' proposed installment agreement and, thus, during a period that levy was prohibited.

The parties agree that defendants' installment agreement was pending from December 7, 2017, when it was processed by the IRS, until October 30, 2018, when they received notice that their proposal was rejected. Under 26 U.S.C. § 6331(k)(2)(A), levy was prohibited during this 327-day period. If defendants had appealed the IRS's rejection of their proposed installment agreement within 30 days, the levy prohibition period would have extended during the appeal. *See* 26 U.S.C. § 6331(k)(2)(B). Defendants did not appeal, and the government commenced this action on November 30, 2018, the day after the 30-day period to appeal had expired.

The parties' dispute presents a question of first impression for this court and centers on the impact of the IRS's referral to the DOJ prior to the formal rejection of defendants' proposed installment agreement. Defendants contend that the IRS violated the applicable statutory provision, *see* 26 U.S.C. § 6331(k), and Treasury Regulation, *see* 26 C.F.R. § 301.6331-4(b)(2), when it referred their unpaid

11

assessment to the DOJ for the commencement of a civil action before formally rejecting their proposed installment agreement. They argue that the referral is therefore unlawful and that, as a result, the Attorney General lacked authority to commence this action. Notwithstanding the premature referral under the regulations, the government contends that this enforcement action is valid because it was commenced 31 days after the rejection of the installment agreement.

We begin with defendants' contention that referral of their unpaid assessment to the DOJ prior to the formal rejection of their proposed installment agreement violates the Internal Revenue Code, specifically 26 U.S.C. § 6331. As stated previously, the statute at issue provides that "[n]o proceeding in court for the collection of any unpaid tax . . . shall be begun by the Secretary" while a taxpayer-proposed installment agreement remains pending. *See* 26 U.S.C. § 6331(i)(4)(A), (k)(2)–(3). Defendants argue that, because § 6331(i)(4)(A) refers to a discrete act by the Secretary, the "proceeding" contemplated by the statute begins immediately upon the Secretary's referral of the assessment to the DOJ. We disagree.

In no way can an IRS referral—that is, a request that the DOJ begin litigation—be considered tantamount to beginning a collection proceeding in

12

court.  Indeed, the language of the very regulation on which defendants rely recognizes the distinction between referring and beginning a case, as it states that "the IRS will not *refer* a case to the [DOJ] *for the commencement* of a proceeding in court against a person named in an installment agreement or proposed installment agreement, if levy to collect the liability is prohibited by paragraph (a)(1) of this section."  26 C.F.R. § 301.6331-4(b)(2) (emphases added).  As their plain terms indicate, the suspension provisions of § 6331(i) and (k) prohibit the commencement of a collection action in court during specified periods, not the IRS's antecedent request that the DOJ file such an action.  In short, the Internal Revenue Code is silent on when the IRS may refer an action to the DOJ, and a Treasury Regulation that limits the IRS's referral power cannot read into the statute something that is not there.  *See Koshland v. Helvering*, 298 U.S. 441, 447 (1936) ("[W]here . . . the provisions of [an] act are unambiguous, and its directions specific, there is no power to amend it by regulation.").

This conclusion is not altered because authorization from the Treasury Secretary is a prerequisite to commencing an in-court proceeding.  *See* 26 U.S.C. § 7401.  An additional step beyond referral is required to begin a collection proceeding in court, that is, the Attorney General (or his delegate) must direct the

13

commencement of an action in the district court. *Id.* Adopting defendants' construction of the pertinent statutory language would conflate the Attorney General's independent discretion to direct the commencement of in-court proceedings with the Treasury Secretary's separate power to refer a tax assessment for a collection action. In other words, if we were to understand the in-court proceeding referenced in § 6331 as initiated solely by the Secretary's referral to the DOJ, we would effectively excise the second step of the two-step process outlined in § 7401.

The fact that other provisions of the same statutory subsection use the term "proceeding" in conjunction with language such as "commence" and "final order or judgment" provides further support for our conclusion that the statute contemplates formal litigation when referring to a proceeding. *See, e.g.*, 26 U.S.C. § 6331(i)(6) ("For purposes of [subsection (i)], a proceeding is pending beginning on the date such proceeding commences and ending on the date that a final order or judgment from which an appeal may be taken is entered in such proceeding."). The decision to repeat the term "proceeding" in § 6331(i)(4)(A) suggests that an equivalent meaning was intended. *See Prus v. Holder*, 660 F.3d 144, 147 (2d Cir. 2011) ("It is the normal rule of statutory construction that identical words used in

different parts of the same act are intended to have the same meaning." (internal quotation marks omitted)). This reading of what constitutes beginning a proceeding in court also has the virtue of being consistent with Rule 3 of the Federal Rules of Civil Procedure, which provides that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Because that complaint was filed 31 days after the formal rejection of defendants' proposed installment agreement, the district court was correct to conclude that § 6331 had not been violated.[6]

---

[6] The two out-of-circuit, unreported district court cases defendants rely upon do not suggest a contrary conclusion, as neither concerns IRS referrals of collection actions. First, *State Auto Casualty Ins. Co. v. Burnett*, 16-CV-73 (DMB), 2017 WL 4355826 (N.D. Miss. Sept. 29, 2017), was an interpleader action filed by an insurance company seeking to distribute insurance proceeds among competing claimants under a commercial building insurance policy. Because the case involved an IRS action to enforce a tax lien pursuant to 26 U.S.C § 6321, rather than a levy under 26 U.S.C § 6331 or a civil action brought under 26 U.S.C. § 6502, *id.* at *9–10, it lends no support to defendants' primary contention that an untimely IRS referral bars the DOJ from initiating a collection action clear of an installment agreement.

Defendants' other cited authority, *United States v. Margolis*, 07-CV-4313 (SRC), 2008 WL 4823599 (D.N.J. Nov. 5, 2008), primarily addresses a question not pertinent here: whether the government can lawfully file a collection action notwithstanding a live dispute as to whether the IRS wrongfully terminated an effective installment agreement. *Margolis* does not speak to the effect a premature IRS referral has on a subsequently filed collection action. And, to the extent the opinion contains language discussing the timing of referrals, this discussion was based on 26 C.F.R. § 301.6331-4(b)(2), rather than the text of the 26 U.S.C. § 6331 itself. *See id.* at *4.

We turn next to defendants' claim that the IRS's violation of the applicable Treasury Regulation should result in the invalidation of the referral and bar this collection action. As noted previously, the relevant regulation prohibits the IRS from referring a case to the DOJ so long as levy is prohibited. *See* 26 C.F.R. § 301.6331-4(b)(2). The government acknowledges that defendants' offer of installment payments remained pending and that, as a result, levy was prohibited at the time of the Secretary's referral in this case. *See* 26 U.S.C. § 6331(k)(2)(A) *accord* 26 C.F.R. § 301.6331-4(a)(1). The government, in effect, concedes that it violated its regulations when it referred the matter prior to the formal rejection of the proposed installment agreement. This concession does not, however, end the inquiry.

Although an agency's failure to follow its own regulations or procedures can require its action to be invalidated, *see United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954), our precedent requires a showing of prejudice to the rights protected where the subject regulation "does not affect fundamental rights derived from the Constitution or a federal statute," *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993).[7] In this case, defendants have not claimed a

---

[7] Where fundamental rights derived from the Constitution or federal statutes are implicated, by contrast, a showing of prejudice is generally not required. *See Montilla v.*

violation of their constitutional rights and, for the reasons stated previously, the regulatory limits on IRS referrals of collection actions are not statutorily derived. As a result, defendants must demonstrate prejudice for the government's regulatory violation to invalidate the instant collection action. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 753 (1979); *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970). Defendants have failed to do so.

Defendants have neither advanced any particular theory of prejudice nor established that they suffered any harm from the IRS's premature referral of this collection action. They do not cite any evidence suggesting that the premature referral improperly curtailed the agency's consideration of their proposed installment agreement, which had been pending before the IRS for nearly a year by the time it was formally rejected. In fact, defendants do not assert they were even aware of the referral at the time they learned the IRS had rejected their proposed installment agreement. To the contrary, the record reflects that the IRS subjected their proposed installment agreement to multiple levels of internal review, furnished notice of the rejection, provided an explanation for why the

---

*I.N.S.*, 926 F.2d 162, 169 (2d Cir. 1991); *see also United States v. Caceres*, 440 U.S. 741, 749 (1979) ("A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law.").

proposal was rejected, and afforded defendants an opportunity to appeal, which they declined to pursue. *See Schiller*, No. 18-CV-6840, Dkt. No. 22, Ex. 2, 3.

On the basis of the record before us, we agree with the district court's assessment that the government's breach of 26 C.F.R. § 301.6331-4(b)(2) in this particular case constituted nothing more than "a technical, non-prejudicial error on the part of the government." *Schiller*, No. 18-CV-6840, Dkt. No. 32 at 9. As a result, defendants' claim that the premature referral in violation of the agency's regulation bars this collection action fails.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.